### Laura Luckey, Appellee, v. Yeomen of America, Appellant.

### Gen. No. 4,937.

1. RES JUDICATA—*what does not bar proceeding under coram nobis section of Practice Act.* A decree in a bill in equity seeking relief against a judgment at law does not bar an application for relief under section 66 of the Practice Act of 1872, where such bill in equity has been dismissed because of the existence of a remedy at law.

2. INSURANCE—*section 1 of act of June 21, 1895, concerning the jurisdiction of Circuit Courts in cases against insurance companies, construed.* Held, that the provision of section 1 of said act of June 21, 1895, which provides that the courts of record of the county where the plaintiff resides shall have jurisdiction of ac-

tions commenced by individuals against an insurance company and that process in any such cause may be directed to any county in the state for service, should not be so construed as to require the sending of the process to the home office of the insurance company, but the summons may properly issue to the sheriff of the county in which the action is instituted and served upon any proper officer of the defendant company who may be found in such county.

3. SERVICE OF PROCESS—*when upon fraternal benefit society sufficient*. *Held*, that the service in this case upon a fraternal benefit society, defendant, was sufficient by being had upon the secretary of one of the subordinate lodges of said defendant society.

4. FRATERNAL BENEFIT SOCIETIES—*who proper plaintiff to recover disability benefits under certificate*. The beneficiary, and not the member, is the proper plaintiff to recover disability benefits under a certificate which promises to pay to such beneficiary upon "the death or disability of said member," and contains no other promise to pay.

5. PRACTICE ACT—*section 66 construed*. *Held*, that under appropriate facts, the amount of a judgment at law may be corrected by motion made under section 66 of the Practice Act of 1872.

Assumpsit. Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed April 14, 1908.

**Statement by the Court.** On January 8, 1907, at the October term, 1906, appellee recovered a judgment against appellant in the La Salle Circuit Court for $2,150 in an action of *assumpsit*. Afterwards, at the March term, 1907, of said court, appellant entered its motion in said court to vacate said judgment and to correct errors in fact committed in the proceedings resulting in the entry of said judgment. This motion was under section 66 of the Practice Act of 1872, which is in part as follows: "The writ of error *coram nobis* is hereby abolished, and all errors in fact committed in the proceedings of any court of record, and which by the common law could have been corrected by said writ, may be corrected by the court in which the error was committed, upon motion in writing made at any time within five years after the rendition of final judg-

ment in the case, upon reasonable notice." The motion by appellant was in writing and set up in detail various grounds on which the motion was based, and it showed that the suit was upon a certain life insurance policy or beneficiary certificate issued by· appellant; and there was included in the motion certain sections of the by-laws of appellant, and there was attached thereto a certain application on which said beneficiary certificate was issued and also a copy of the entire constitution and by-laws of appellant. Upon a hearing of the motion appellant read in evidence the affidavit of Fred B. Silsbee, the national president of appellant; the affidavit of John L. Walker, the national secretary of appellant; the application for the beneficiary certificate in question and all papers attached thereto; and the *præcipe,* summons and return, declaration and pleadings leading up to the judgment which the motion sought to have vacated. Appellant then read in evidence a transcript of what was alleged to be the evidence heard by the court before the entry of said judgment and also the certificate of incorporation of appellant and certain sections of its by-laws; and then examined Silsbee as a witness in open court. Appellee, upon the hearing of said motion, read in evidence the affidavit of George H. Haight and a certified copy of a bill of complaint filed in a certain chancery cause brought by the Yeomen of America against Laura Luckey in said La Salle Circuit Court after the entry of said judgment and before the making of the motion now in question, the object of which bill was to enjoin the collection of such judgment and to obtain a decree setting aside said judgment and ordering a new trial at law with leave to said Yeomen of America to defend therein; also a demurrer of said Laura Luckey thereto; also a decree sustaining said demurrer and dismissing said bill for want of equity; all of which was before the entry of the motion now in question. The motion was denied at the costs of

appellant.    This is an appeal from that order and judgment.

From this proof it appears that the certificate in question was issued to "Charley" Luckey, a member of Grand Ridge Council, No. 212, of the Yeomen of America, located at Grand Ridge (which is in LaSalle county), and providing for payment of not exceeding $2,000 to Laura Luckey, his mother, in case of his death or disability, which certificate was dated August 28, 1903, and was countersigned by the Grand Ridge Council on September 9, 1903.    On June 1, 1906, Charles Luckey, by Amos Luckey, his father and next friend, sued out a summons against appellant from the Circuit Court of La Salle county, directed to the sheriff of said county to serve, and afterwards it was filed in court with a return of service thereon by the sheriff of said county, the body of which was as follows: "I have duly served the within summons on the within named The Yeomen of America, by reading the same and by leaving a copy thereof with J. T. Bute, secretary and an agent of the within named The Yeomen of America, this 1st day of June, 1906. The president of the within named The Yeomen of America is not found in my county."    Afterwards, on June 16, 1906, on motion of the plaintiff in said cause, an order was entered giving leave to substitute Laura Luckey as plaintiff in place of Charles Luckey, by Amos Luckey, his father and next friend.    Afterwards, on September 24, 1906, Laura Luckey filed in said cause a declaration against appellant upon said bene-ficiary certificate.    On January 8, 1907, appellant was ruled to plead instanter in said cause and was de-faulted and proofs were heard and the judgment in question was entered.

ALDRICH & WORCESTER and ELMER E. ROBERTS, for appellant.

D. B. SNOW and HALL & HAIGHT, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

It is contended by appellee that the decree sustaining the demurrer to appellant's bill in equity, which prayed for the same relief here sought, and dismissing said bill for want of equity, is a bar to this proceeding at law under section 66 of the Practice Act of 1872, which is substantially the same as section 89 of the Practice Act of 1907. We are of opinion that it was not such a bar, under the principles laid down in Farmers' & Mechanics' Life Assn. v. Caine, 123 Ill. App. 419, and 224 Ill. 599.

The home office of appellant was in Kane county. Section 1 of the act of June 21, 1895, concerning the jurisdiction of Circuit Courts in cases against insurance companies, provides that the courts of record of the county where the plaintiff resides shall have jurisdiction of actions commenced by any individual against any insurance company and that process issued in any such case may be directed to any county in the state for service. Appellant insists that the words "may" in that statute should be read "shall," and that it was essential to jurisdiction that the summons in this case should have been sent to the sheriff of Kane county to execute. We conclude that the statute just referred to was intended for cases against insurance companies where the plaintiff could not find in his own county where he instituted the suit any agent of the insurance company upon which service of process against such insurance company could lawfully be had; but that section 4 of the Practice Act of 1872 was not intended to be repealed thereby or to be made inapplicable to insurance companies who had in the county where the suit was brought an agent upon whom service might be had. That section authorizes service upon an incorporated company by leaving a copy thereof with the president, if he can be found in the county where the suit was brought, and if he shall not be found in such county, then by leaving a copy with any

clerk, secretary, agent, etc. We are of opinion that this summons was properly addressed to the sheriff of La Salle county, if any person could be found in said county upon whom service could lawfully be had.

The return to the summons in this case showed service upon the within named Yeomen of America by reading the same to and by leaving a copy thereof with "T. J. Bute, secretary and an agent of the within named The Yeomen of America," the president of said The Yeomen of America not being found in the county. Appellant contends that Bute was not a person upon whom service of a summons against appellant could lawfully be had. At the close of the certificate upon which this suit was brought, as it appears upon page 48 of the record, where it is apparently reproduced substantially in *fac-simile*, the attestation clause is on the right-hand side, while on the left-hand side is the seal of the supreme council, and underneath it, still opposite said attestation clause, is a seal bearing the following impression: "Grand Ridge Council No. 212 Grand Ridge (Seal) Illinois. Yeomen of America." Below this are the signatures of the supreme president and the supreme secretary, followed by an acceptance of the certificate by Charles Luckey, underneath which is the following: "We the undersigned, President and Secretary of Grand Ridge Council No. 212 of the Yeomen of America, do hereby countersign and attach the seal of this council hereto this 9th day of September, 1903. T. J. Bute, Secretary. J. S. Dearth, President." It will therefore be seen that the certificate itself bears evidence that Bute was the secretary of the local council of appellant at Grand Ridge and that his official signature as secretary and his affixing of the seal of the local council were essential to the validity of the certificate. The proof shows that he continued to hold that office from that time till the service of this summons upon him and until the hearing of the proofs on default and the entry of the judgment. Appellant offered in evidence a transcript of the proof

taken before the court upon default, upon which the
judgment was based. That transcript shows that Bute
was a witness at that hearing. He there testified that
he was "acting as secretary" of appellant, and it is
argued that a person merely acting as secretary would
not be one upon whom service of summons could be
had. But it is plain from his entire examination that
he meant that he was the secretary of the Grand Ridge
Council, No. 212, of the Yeomen of America, and has
ever since been such secretary. It was held in Grand
Lodge A. O. U. W. v. Lochmann, 199 Ill. 140, that in
Illinois the relation of subordinate lodges to the grand
lodge in societies of this kind is that of agency, and
in Court of Honor v. Dinger, 221 Ill. 176, that the
officers of the subordinate lodge act as agents of the
supreme lodge. While an affidavit read in evidence
by appellant denies that Bute was the secretary or
even a member of appellant, it is not denied but that
he was when the summons was served and when the
trial was had the secretary of the Grand Ridge Coun-
cil of appellant and a member thereof. We hold that
the service upon him was sufficient. That service was
had on June 1, 1906. The proofs show without con-
tradiction that appellant had at or about that time
at Ottawa an attorney, who was also the local agent
of appellant at Ottawa, who advised appellant of the
pendency of this suit at its head office in Aurora before
June 15th. The president states that he did not know
of the commencement of the suit until about July 10,
1906, but there is no showing but that the secretary of
appellant at its home office or some other officer may
have immediately known of the commencement of said
suit. The affidavits of Silsbee, president of appellant,
and Haight, attorney for appellee, show that in the
latter part of June, or early in July, 1906, they were
in communication with each other by personal inter-
view and by telephone concerning the pending suit.
There is a sharp controversy between them as to ex-
actly what occurred. Silsbee alleges that he convinced

Haight that he should amend and make Charles Luckey the plaintiff, and that Haight agreed to do so and to send him a copy of the declaration when filed; and agreed that nothing further should be done in court except to make the amendment and to file the declaration, till Haight sent a copy of the declaration to Silsbee; that then Silsbee would enter the general appearance of appellant and intended to file pleas (which of itself shows that he did not then intend to rely upon the insufficiency of service now alleged); that he did not receive a copy of the declaration, and paid no further attention to the case, in reliance upon Haight's promise, and did not know of the default and judgment until after that term had expired and an execution had been placed in the hands of the sheriff of Kane county. Haight alleges that there was no agreement to change the name of the plaintiff back to Charles Luckey; that he applied to Silsbee for a copy of the application and of the proofs of disability, and stated to Silsbee that he could not well draw the declaration without said proofs of disability; that Silsbee promised to send them to him; that later he again called upon Silsbee for said proofs of disability and had another promise that they should be sent him; that he never received such proofs, and became satisfied that Silsbee was deceiving him, and thereafter proceeded without further intercourse with the head office. It will thus be seen that from the time the president was fully informed of the nature and pendency of the suit, and from the time that defendant's local attorney knew thereof, till the judgment was rendered, was about six months, and that from the filing of the declaration till the default was about three and one-half months.

Appellant argues that this action could not be maintained in the name of Laura Luckey, but that the cause of action was in Charles Luckey, the member, so long as he lived, and that Laura Luckey had no cause of action except in the event of the death of Charles Luckey. From an examination of the various sections

of the by-laws relating to this subject it would seem
to be a reasonable inference from the rather ambig-
uous language used therein that they intend that the
member shall be the one who shall receive payment for
disabilities, and that the beneficiary named shall only
receive payment in case of the death of the member.
But this certificate does not so read. It provides that
appellant "hereby promises and binds itself to pay out
of its reserve fund to Laura Luckey, related as mother,
a sum not exceeding $2,000, in accordance with and
under the provisions of section 120 of the laws gov-
erning said fund, upon satisfactory evidence of the
death or disability of said member," the member hav-
ing been previously named as "Charley" Luckey.
Said section 120 of the by-laws relates to the death of
the member only, and other sections cover the subject
of partial disability and total disability.  If, therefore,
in the part just quoted "or disability" had been omit-
ted, then it would be clear that Laura Luckey had no
cause of action during the life of the member.  But the
promise here is to pay to Laura Luckey upon "the
death or disability of said member," and there is no
other promise in this certificate to pay anything to
anyone.  It is therefore obvious that if the suit had
been prosecuted in the name of the member, he was
liable to be met with the defense that the money by
the express terms of the contract was payable only to
his mother.  How the certificate came to be made to
read as it does is not explained.  The by-laws in ques-
tion had been in force only a little over three months,
and it may be that this was an old form of certificate
which conformed to previous by-laws.  Be that as it
may, appellee ought not to be deprived of a recovery
because of the by-laws when suing upon a contract ex-
pressly made payable to herself alone.  But we regard
this as immaterial for another reason.  Charles Luckey
brought the suit.  On his motion Laura Luckey was
substituted as plaintiff.  He was a witness at the hear-
ing after the default.  He is bound by the judgment

and would be estopped from bringing a suit in his own name upon this certificate after his mother had recovered the full amount due.

The disability alleged is total blindness of both eyes. The bill in equity asserted that the member is not totally blind. No such point was made upon the motion to vacate the judgment. The proofs taken upon the default and offered by appellant upon the hearing of this motion show that Charles Luckey is practically totally blind and irrecoverably so. It is true that he can discern with one eye the difference between a strong light and total darkness, but he cannot see any visible objects nor distinguish the windows in a room by looking at them, and his affliction is undoubtedly total disability.

There are two respects in which the judgment is not in harmony with the by-laws. It is for too large a sum. The promise is not to pay $2,000, but a sum not exceeding $2,000. It is clear that the payment is to be made pursuant to the by-laws. Section 106 thereof defines total disability and includes the disability of total blindness and provides for the payment in such case of "the full certificate, less unpaid costs," after proofs of disability, etc. Section 108 provides that the unpaid balance of the purchase price shall be deducted from the certificate. Section 109 is as follows: "Our Plan—Justice to All—Is understood to mean that all members shall pay the *cost price* for their insurance regardless of the date of death. In computing the *cost* of Insurance on our tables, the monthly payments are figures to seventy years of age on all ages below fifty, and expectancy tables are used for all ages above and including fifty years of age." Section 110 provides, among other things, as follows: "If death or disability occurs previous to reaching seventy years of age or expectancy period, the unpaid monthly payments for the unexpired time will be deducted from the certificate." Appellant had two classes of certificates, called "A" and "B." Section 117 of the by-

laws is a table of rates under certificate "B." Charles Luckey's nearest birthday at the time of the application for insurance was the eighteenth. The rates for certificate "B" required a person of that age to pay forty cents per month on each $1,000 of insurance. He therefore paid eighty cents per month. Silsbee testified that up to and including the month of December, 1906, Charles Luckey had paid into the order for forty months, or $32. As he paid eighty cents per month, and was insured at the age of eighteen, the by-laws required him to pay eighty cents per month for fifty-two years, or for 624 months. The total sum he would therefore have to pay for his insurance, if he had continued to pay till he reached the age of seventy years would be $499.20. That sum, deducted from $2,000, would leave $1,500.80. According to the by-laws his certificate, therefore, was treated as worth the net value of $1,500.80 at the time it was issued. He paid $32 in monthly payments. Therefore, according to the plan of the society, the net value of his policy on December 31, 1906, just before this judgment was entered, was $1,532.80, and the judgment was for $617.20 more than the liability of the company upon said certificate. We do not feel called upon to decide whether it was wise or reasonable for such a society to require its members to pay the cost of the insurance till the member would have reached the age of seventy years, regardless of whether the insurance is kept in force that long. It is sufficient in this action at law that the certificate and by-laws show that that is the contract between the member and the society. It is perhaps due to the trial court to say that if the transcript of the evidence heard upon the default contained all the evidence presented to the court below, as seems to have been admitted on the hearing of the motion, then the trial court in rendering judgment did not have before it the by-laws, but acted on the supposition that the certificate was a promise to pay $2,000 upon total disability.

It is contended by appellee that if the amount is too large, it cannot be corrected on this motion. The scope and purpose of the motion are defined in the late cases of Mitchell v. King, 187 Ill. 452; Consolidated Coal Co. v. Oeltjen, 189 Ill. 85; Tosetti Brewing Co. v. Koehler, 200 Ill. 369; Pisa v. Resek, 206 Ill. 344, and Domitzski v. Am. Linseed Oil Co., 221 Ill. 161. From these cases it may well be doubted whether relief merely as to the amount of the judgment can be granted on this motion. But there are two considerations tending to the opposite conclusion: First, the failure to credit appellant with the "unpaid cost" was an error in fact arising from the failure of appellee to present the by-laws to the trial court. Second, appellee by her demurrer has induced the court to hold that there was no remedy in equity, obviously because there was this remedy at law. If we hold now that relief against this excess cannot be granted in this motion at law, we shall be met at the next term by a writ of error in the chancery cause and shall be compelled to hold that relief should have been granted in that cause. We conclude that appellee, having procured the dismissal of the bill in equity without a hearing, should not now be permitted to object to the granting of this relief here.

The judgment is unauthorized by the by-laws in another particular. This certificate belonged in class "B." An examination of sections 108, 110, 117 and 118 of the by-laws shows that certificates under class "B" are not to be paid in cash down, but that payments of 20 per cent. annually will be made for five years instead of in a lump sum. It would therefore seem from the by-laws that appellee was entitled to recover $306.56 annually for five years, instead of $1,532.80 at once. We however do not feel called upon to correct this in this proceeding. First. It would be a dilatory defense, if interposed, and does not affect the amount of the liability of appellant. Second. Silsbee testified that the net value of the policy on December 31, 1906, was

$1,532.80, and being asked by the court whether his understanding of the by-laws was that there would have to be a suit for each separate installment as it became due, gave an answer which showed that he himself was in doubt as to the meaning of the by-laws on that subject. Third. In the bill in equity filed by appellant and sworn to by Silsbee it was alleged that under the by-laws 20 per cent. was payable after due proof of disability and allowance of the claim and that the balance was payable in sixteen equal quarterly instalments, payable on the last days of March, June, September and December following the first payment, and this although section 18 of the by-laws attached to the bill of complaint as an exhibit provides for "five annual payments in case of disability." As the officers of appellant are in so much doubt as to the meaning of the by-laws on this subject, we shall not undertake to enforce them.

The order is therefore reversed and the cause is remanded with directions to the court below, if plaintiff shall remit $617.20 of the principal of the judgment, then to enter an order for the indorsement of that credit upon all executions, and that the judgment shall be satisfied upon payment of $1,532.80 of the principal of the judgment, and interest thereon, and costs to the date of the judgment, adjudging the costs of the motion against plaintiff; and if plaintiff shall not make such *remittitur*, then to vacate the judgment and grant the defendant leave to plead to the merits.

*Reversed and remanded with directions.*