Myrtle Raymer, Appellee, v. Modern Brotherhood of America, Appellant.

## Gen. No. 5254.

1. PLEADING—*when absence of similiter immaterial.* Where a pleading concludes to the country and no further pleading is filed by the opposite party, but the parties go to trial, the case is treated as though a written *similiter* were filed and an issue of fact thereby formed.

2. PLEADING—*effect of joining issue upon replication.* If issue has

been joined upon replications and such issue decided against the defendant, such defendant so having joined issue will not be heard to say that such replications were demurrable and did not constitute a legal answer to the pleas.

3. APPEALS AND ERRORS—*when stipulation not part of record.* A stipulation which pertains to the pleadings in a case upon which no order of court has been predicated is not a part of the common law record.

4. APPEALS AND ERRORS—*what complaint cannot be made.* A party cannot complain of the submission to the jury of a question as one of fact where he has induced the court so to do, even though such question may in fact have been one of law.

5. INSURANCE—*when statements constitute representations and not warranties.* *Held,* that because statements were made by the applicant as true "to the best of his knowledge and belief," and because of other kindred reasons, the statements in question in this case were representations, and not warranties.

6. INSURANCE—*what essential to void policy because of false representations in application.* In order to defeat a recovery upon a policy upon the ground that false representations as to health, medical history, etc., were made in the application, it must be shown that at the time of making them the applicant knew or believed his representations to be untrue.

7. INSURANCE—*what not false representation affecting policy.* To a question as follows: "Where and by what physician were you last attended, and for what complaint?" the answer given was, "None." *Held,* that evidence to the effect that the applicant had prior to the making of such answer called upon doctors at their offices for advice did not establish the falsity and lack of good faith in making such answer.

Assumpsit. Appeal for the Circuit Court of Stephenson county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1910. Affirmed. Opinion filed June 28, 1910. Opinion modified and rehearing denied October 18, 1910.

BARKER, CHURCH & SHEPARD, for appellant; WILLIAM T. CHURCH, of counsel.

ROBERT B. MITCHELL, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On March 27, 1906, Arthur Raymer applied for a benefit certificate in the Modern Brotherhood of America, appellant herein. On April 3, 1906, appellant issued to him a certif-

icate which provided that in case of his death $1,000 should be paid by appellant to Myrtle Raymer, his wife, the appellee. Arthur Raymer died on January 27, 1908. Myrtle Raymer brought this suit to recover the sum named in said certificate. The declaration contained one count upon the certificate, to which was afterwards added common counts for money had and received and for interest. Appellant filed fifteen pleas and four additional pleas. Appellee filed eleven replications to said pleas, each concluding to the country. The clerk has inserted in the record a stipulation, hereinafter mentioned, as to said replications. The parties went to trial. Appellee recovered a verdict for $1,000. Motions by appellant for a new trial and in arrest of judgment were overruled and appellee had judgment, from which defendant below prosecutes this appeal.

The certificate recited that it was issued in consideration of certain payments "and the representations, statements and answers made in the application for membership, a copy of which application is hereto attached and made a part hereof." It also contained the following:

"This benefit certificate is issued and accepted upon the following express warranties, conditions and agreements.

"1. This certificate, the articles of incorporation, fundamental laws, by-laws, rules and regulations of this society now in force, or which may be hereafter adopted, and the application for membership, including the physician's report, a copy of which application and report is hereto attached, shall together constitute the exclusive contract between this society, the member and the beneficiary."

Part 1 of the application, after certain questions and answers, contained the following:

"I declare that I am, to the best of my knowledge and belief, in sound physicial condition, and I further declare and warrant that the above statements, together with the answers made or to be made in the other parts of this application by me to the physician, are true and shall form the basis of my contract for membership and certificate, between me and my beneficiary and all parties who may at any time have an

interest therein, and the said society, and any untrue or fraudulent answers, or suppression of facts in regard to my health, personal habits or physical condition, in this application * * * shall immediately make said benefit certificate null and void * * * · I further agree that the certificate hereby applied for shall not be in force until * * * the actual delivery of the certificate to me during my good health."

Part 1 was signed by Arthur Raymer. Part 2 consisted of questions to be put by the examining physician and answered by the applicant. Among other questions and answers were the following: "4. Have you ever had any of the following diseases? Answer 'yes' or 'no' opposite each. If 'yes' state the date, duration and severity of illness." Here follows a list of thirty six different diseases, and the answers all in the negative, and among them these: "Consumption No. * * * Disease of the lungs. No. * * * Pleurisy. No." "5. Have you ever had any other disease or surgical operation? No." "9. When and by what physician were you last attended and for what complaint? None." "16. Has either of your parents, or any of your brothers, sisters, uncles, aunts or grand-parents been afflicted with rheumatism, insanity, tuberculosis, scrofula, or any hereditary disease? No." "21. Are you aware of anything regarding your health, habits, circumstances, or family history not already stated that should be known to the fraternity in order to fairly estimate the risk on your life? No." Under the head of "Family Record" he stated that his mother died of pneumonia and that he had two sisters living in good health. The following was added to part 2: "I hereby further declare that I have read and understood all of the above questions put to me by the medical examiner and my answers thereto, and that my answers are warranted by me to be true, and that I am the same person described above." This was signed by Arthur Raymer. There was a Part 3, containing questions and answers and signed by the applicant's medical examiner only, which appellant claims, and appellee denies, is a part of the application, in which was the following: "22.

Has the applicant during the past 5 years lived in the same house with or nursed anyone suffering from consumption? If so, state the particulars? No."

The first plea was the general issue. The remaining pleas were special and averred the making of the application, and set out particular parts thereof and alleged their untruth. The second plea alleged that on the date of the delivery of the certificate to Raymer, he was not in good health, and was sick and in unsound health and his health was permanently impaired, which appellant did not know, but which facts Raymer well knew and concealed them with intent to deceive appellant and to procure said certificate. The third plea averred that at the time of said application and for a considerable time prior thereto, Raymer had had consumption and knew that his answer on that subject was false and made the false answer with intent to defraud appellant, and that appellant relied thereon and was defrauded thereby and would not have issued the certificate if it had known that he had consumption. The fourth plea averred that Raymer, at the time of the application and for a considerable time prior thereto, had had consumption and that his answer on that subject was false. The fifth plea averred that the answer to the 14th question in the application was false; that within seven years preceding the application Raymer had been severely sick and afflicted with consumption, tuberculosis, and other diseases of the lungs, and that he knew said answer to be untrue and made said false answer to deceive appellant, and that appellant was deceived thereby and relied on the false answer and would not have issued the certificate if it had known the truth. The sixth plea averred the falsehood of the answer to the 14th question, and that Raymer within seven years preceding the application Raymer had been severely sick and afflicted with consumption, tuberculosis, and other diseases of the lungs. The seventh plea averred the falsehood of the answer to the 16th question and averred that before the making of the application the mother of Raymer had been afflicted with tuberculosis, and a sister of Raymer then was, and theretofore had been afflicted with tuberculosis;

that he well knew the answer was false and made it with intent to defraud appellant and that appellant relied on the false answer and would not have issued the certificate if it had known the truth. The eight plea averred the falsehood of the answer to said 16th question. The ninth plea averred the falsehood of the statement in the application under the head "Family Record," wherein it was stated that the mother of Raymer died of pneumonia, whereas she died of pulmonary tuberculosis; that Raymer knew the answer to be false and made it with intent to deceive appellant, and appellant was deceived thereby and would not have issued the certificate if it had known the truth. The tenth plea alleged that said statement in the family record was false and that said mother of Raymer died of pulmonary tuberculosis. The eleventh plea averred the falsity of the statement under the head "Family Record" that the health of the two sisters of Raymer was good, whereas one of them was suffering from disease of the lungs; that Raymer knew that the answer was false and made it to deceive appellant and that appellant was deceived thereby and would not have issued the certificate if it had known the truth. The twelfth plea averred the falsity of said statement about the two sisters of Raymer and averred that one of them was suffering from disease of the lungs. The thirteenth plea averred the falsity of the answer to question 22 in Part 3, and alleged that within five years next preceding the application, Raymer lived in the same house with and nursed his wife, who was suffering from consumption, that Raymer made the false answer to deceive appellant and that appellant was deceived thereby and would not have issued the certificate if it had known the truth. The fourteenth plea averred the falsity of said answer to said question 22, and that Raymer, within five years next preceding the application, lived in the same house with and nursed his wife, who was suffering from consumption. The fifteenth plea averred that each of the statements and answers contained in said application were untrue. The first additional plea averred the falsity of the answer to the ninth question and averred that within one year preceding the application,

Raymer had been attended by a physician for a complaint with which he was then suffering; that he knew that said answer was false; that he made it with intent to defraud appellant and that appellant was defrauded and that appellant would not have issued the certificate if it had known the truth. The second additional plea alleged that the said answer to the ninth question was false and that Raymer, within one year before the application, had been attended by a physician for a complaint with which he was then suffering. The third additional plea averred the falsity of the answer to question 22 in said part 3 in that Raymer within five years before the application, lived in the same house with his wife, who was suffering from consumption; that said false answer was made by Raymer with intent to deceive appellant and that it did deceive appellant and that appellant would not have issued the certificate if it had known the truth. The fourth additional plea related to the same answer and alleged that it was false and that Raymer had, within five years next preceding the application, lived in the same house with his wife, who was suffering from consumption. Such of these pleas as merely averred the falsity of the answer, averred also that such answer was a warranty. Appellee filed a *similiter* as to the first plea and special replications to all the other pleas, sometimes making one replication apply to more than one plea. As to all pleas which related to question 22 in Part 3, the replications averred that said alleged Part 3 was not a part of the application nor binding upon the applicant. Each replication alleged that the answer therein referred to was not false; that Raymer did not know the answer was false; that he did not make such answer with intent to defraud appellant and that appellant was not deceived thereby; that, if Raymer made any statement or answer in the application, not in accordance with the facts, it was made by him in good faith, believing the same to be true, and that the benefit certificate did not thereby become void. Each of said special replications concluded to the country. No written *similiters* were filed by appellant.

The law is that where a pleading concludes to the country

and no further pleading is filed by the opposite party, but the parties go to trial, the case is treated as if a written *similiter* were filed and an issue of fact thereby formed.    Funk v. Babbitt, 156 Ill. 408; Kaestner v. First Nat. Bank, 170 Ill. 322; Supreme Court of Honor v. Barker, 96 Ill. App. 490. The clerk has copied into the record the following stipulation, purporting to be signed by the attorneys for the respective parties:

"It is hereby stipulated by the parties hereto, that by going to trial on the replications filed by the plaintiff, the defendant shall not be held to have admitted that any matters set up in said replications or either of them which are not a good answer in law to the defendant's 4th, 6th, 8th, 10th, 12th, 14th and 15th pleas or which is immaterial as to said pleas, or either of them, is a good answer to such pleas or either of them."

This stipulation is not embodied in the bill of exceptions nor does it appear that any order of court was made concerning the same.    We are of opinion that the clerk has no power to make such a stipulation a part of the record in an action at law.    Wilson v. McDowell, 65 Ill. 522; People v. I. & St. L. R. & C. Co., 122 Ill. 506.    Cases holding otherwise are generally in equity.    But if the stipulation is a part of the record, and if it is to be treated as an imperfect pleading, we are of opinion that no force or effect can be given to it. It appears to mean that by joining issue and going to trial appellant did not waive the right to demur to the replications therein mentioned, if at any time thereafter it should be found that they were subject to demurrer.    Many of these replications were double, and if they had been demurred to on that ground appellee would have been compelled to file a larger number of replications to raise all the issues presented by the replications which were filed.    One of the questions which might have been raised by demurrer to some of these special replications was whether it was an effective reply to certain of the pleas to aver that Raymer did not know the falsity of the answer but believed it to be true and made it in good faith. We are of opinion that appellant could not join issue on

these allegations of the replications and, after that issue was decided against it, be heard to say that those parts of the replication were demurrable. It follows that by joining issue upon those replications and going to trial, appellant has admitted that if Raymer believed the answers to be true and did not intend to deceive thereby, then appellant is liable upon the certificate, whether the answer was in fact true or not.

In this state of the pleadings, the question whether the statements contained in the application are warranties or representations is really immaterial, for the issues joined treat them as representations only. But we are of opinion that they are representations and not warranties. In the parts of the certificate above set out, they are first called representations and then warranties. In Part 1 of the application Raymer was made to declare that *"to the best of his knowledge and belief"* he was in sound physical condition. This qualifies his alleged warranty elsewhere that he had never in his life had any one of some 36 enumerated diseases. Further on, the application agrees that any fraudulent answer shall make the certificate void. If there was an express warranty that every answer was absolutely true, it would be superfluous to say also that fraudulent answers would make the certificate void. That provision implies that answers in good faith would not make it void. It is unreasonable to suppose that Raymer took his policy with a distinct understanding that it would be void if he had ever in his life from his earliest infancy had any one of the 36 diseases enumerated in question No. 4, which included such common complaints as la grippe, malaria and neuralgia, or that any life insurance company or beneficiary society would exact a warranty of the truth of matters which, from the very nature of the inquiry, might be wholly unknown to the applicant. If the abstract truth of all answers to the questions in this application were warranted, there is scarcely a probability that any liability could ever accrue under such a certificate or policy. These and other considerations lead us to the conclusion that the answers and statements in the application are to be held rep-

resentations and not warranties.    Minnesota Mut. Life.
Ins. Co. v. Link, 230 Ill. 273; Continental Life Ins. Co. v.
Rogers, 119 Ill. 474; Moulor v. Am. Life Ins. Co., 111 U. S.
335; Berner v. Brotherhood of Am. Yeomen, 154 Ill. App.
27.

It is not clear from the authorities whether the materiality
of the statement is a question of fact for the jury or of law
for the court.    The authorities seem to indicate that it is a
question of fact for the jury, unless the form of the certificate
or the question makes it a matter of law for the court.
Spence v. Central Accident Ins. Co., 236 Ill. 444.    We are
of opinion that if a question of law, the court must have
found, and if a question of fact the jury should have found,
that the answers by the applicant that he had not had con-
sumption and that his parents and sisters had not had
tuberculosis, that his mother died of pneumonia and that his
sisters were in good health, were material.    Appellant, by
instruction No. 3, caused the court to submit to the jury the
question whether at the time the certificate was delivered to
Arthur Raymer, he was not in good health but suffering from
illness of a serious nature and whether that fact was material
to the risk.    Appellant therefore induced the court to hold
that the materiality of the answers was a question of fact
for the jury, and it cannot now complain if that view was
adopted in this case.    Indeed, by the third clause of its brief,
filed here, appellant contends that if the statements in
question were representations appellant was entitled to have
their truthfulness *and materiality* submitted to the jury by
proper instructions, and it is therefore bound here by the
proposition that the materiality of the representations was
a question of fact for the jury.

As already shown, the form of the issues submitted by
appellant made the validity of the defense here interposed
to depend upon whether Arthur Raymer made the answers
in good faith, believing them to be true.    We are also
of opinion that it is the general tenor of the cases above
cited and also of Globe Mutual Life Ins. Assn. v. Wagner,
188 Ill. 133, and of Ill. Masons' Benevolent Soc. v. Win-

throp, 85 Ill. 537, that all that was required of the applicant was that the answers should be a fair statement of the facts, honestly and truly given, as understood by the applicant. Moreover, it is a rule applicable to contracts generally that to authorize rescission because of the untruth of a representation relied upon in making a contract, it must be shown that the party making the untrue representation knew or believed it to be untrue. Prentice v. Crane, 234 Ill. 302; Gillespie v. Fulton Oil & Gas Co., 236 Ill. 188. Or, as said of the doctrine at law in 2 Pomeroy's Equity Jurisprudence, sec. 884: "No misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity, or under such circumstances that the law must necessarily impute such knowledge to the party at the time when he makes it." Therefore both by the rules of law applicable to the case and by the issues upon which the case was tried, it was essential to establish a defense that it be proven not only that some representation made by Arthur Raymer was material and untrue, but also that he knew it to be untrue or did not act in good faith in making it.

In the application Raymer declared that to the best of his knowledge and belief he was in sound physical condition; that he had not had consumption, disease of the lungs, pleurisy or any other disease, or any disease or severe sickness during the last seven years and he therein agreed that the certificate should not be in force until its delivery to him during his good health. Appellant contends that he was not in good health when the application was made and certificate delivered, and that he had consumption, disease of the lungs, and pleurisy, and that the circumstances were such that he must have known these facts. The application was dated March 27, the medical examination was held March 29 and the certificate was issued April 3, 1906, and the applicant died January 27, 1908, of pulmonary tuberculosis. Appellant called Dr. Best, who first visited Raymer December 15, 1907, and thereafter attended him till his death. Dr. Best testified that Raymer worked at the barn where the doctor kept his horse and he therefore saw Raymer

frequently; and that for three or four years before his death, Raymer was emaciated, coughing and running down in general health, and looked like a man suffering from tuberculosis.   Dr. Karcher testified for appellant that he treated Raymer professionally from February 5 to May, 1906, which covered the period when his certificate was applied for and issued; that Raymer complained of a cough and pain in the side, and that he had pleurisy at first, and that afterwards the witness diagnosed the case as pulmonary tuberculosis, but that he did not tell Raymer what his diagnosis was, and that Raymer was working all the time, and he did not attend Raymer at his house.   Samuel Raymer, the father of Arthur Raymer, testified for appellant, that before Arthur's mother died, which was January 29, 1906, Arthur took medical treatment; that a month or two after his mother's death he came to the house in a buggy and was "pretty sick, kind of poorly;" that he had a cough before his mother died.   Peerless Chapman, witness for appellant, testified that she nursed Arthur's mother during the last three weeks of her life and that she saw Arthur there twice during that time; that he was thin, frail, emaciated and had a cough.   Mary Windecker, the mother of Arthur Raymer's first wife, who died October 12, 1902, testified for appellant that Raymer and her daughter lived in her house from March, 1902, till the daughter died, and that he then continued there two or three months; that he was weak and coughed and was not well, and that thereafter she saw him every two weeks till his mother died, which was in January, 1906, and that he was worse than before and was coughing. Pearl Windecker, a sister of Raymer's first wife, testified for appellant that she lived in her mother's home while Arthur Raymer lived there, and that Arthur was not very well and coughed a great deal, and that she knew him after he left their house, somewhere about January, 1903, and that after that he grew gradually weaker and coughed very much more than before.   J. G. Hayes testified for appellant that Raymer worked nights in his livery barn from April, 1906, till November, 1907, and that he was weak a part of

that time and not able to do a man's full work.    On the
other hand, appellee introduced the following testimony:
George Becker was accustomed to shave Arthur Raymer.    He
testified that Raymer had a cough for the last five or six
months before he died and that he had not noticed it before,
and that Raymer was tall and thin.    Edward Reinhold tes-
tified that he knew Raymer since six or seven years before
the trial, which would be the last five or six years of Ray-
mer's life, and that he saw him early in 1906 and that he was
then in his usual health.    Andrew Buss testified that he
knew Raymer a couple of years before his death, and that
his health seemed to be good.    John Baker, the father of
Raymer's second wife, the appellee here, testified that Ray-
mer married his daughter in 1903 and moved to Iowa and
came back to Freeport in the spring of 1904 and lived with
him till June, 1905, and then moved to Mendota, and in No-
vember, 1905, moved to Stockton, and in January or Febru-
ary, 1906, came back to Freeport and moved in with the wit-
ness, and from that time on Raymer lived there till he died;
that from February, 1906, he saw Raymer every day; that
Raymer's health was good so far as he knew and so continued
till five or six months before he died; that he kept on
working and made no complaint; that the witness never
knew Raymer to have a cough till six months before he died;
that it was four to six months before Raymer died that
the witness first noticed something wrong about him; that
Raymer was an extra good workman and worked for him
in the summer of 1904; that he ceased work about two
months before he died and a physician was called about
six weeks before he died.    Burt C. Baker, a brother of
appellee, testified that Raymer lived with him at Stockton
from November, 1905, till February, 1906; that he only
came to Freeport once till his mother's death, and then only
stopped at his mother's house at noon and then returned to
Stockton, and came again to Freeport to his mother's funeral.
He also testified that he knew Raymer about twelve years
and saw him about once a day; that he worked with him in

Freeport in 1904; that he did not know that Raymer was sick till about two months before he died and never heard him cough till about a month before he died; that at Stockton Raymer worked every day and was never sick. Dr. Peck also testified for appellee concerning his examination of Raymer in March, 1906, for appellant, when Raymer applied for this certificate. He testified that he had known Raymer eight years and examined him on March 29, 1906; that he examined his heart and lungs by auscultation; examined his heart, lungs, liver, stomach and bowels by percussion, his urine by analysis, his lungs and height by measurement, his temperature by a fever thermometer, and the general outline of his chest by inspection, and that he observed the number of respirations per minute and their character. He testified that he made a thorough examination; that Raymer's health was then very good; that his health was normal, that is, that so far as a physician could ascertain by a medical examination, he was then in good health. Appellee testified that she first met Arthur Raymer in 1902; that they were married in 1903; that he was taken sick about six months before he died; that his health was very good before that time; that his cough first appeared from four to six months before he died; that he was in good health in March, 1906, when examined for this certificate, though he then had a cold; and that he never was sick while they lived in Stockton. Della Mitchell, the married sister of Arthur Raymer, testified that she moved from Freeport to another town in that county three years before Arthur died and did not see him frequently after that, but that before her removal she saw him often and that he was in good health.

It will be seen that this evidence is very conflicting. While that introduced by appellant tends to show that Raymer had tuberculosis before he applied for this certificate, or pleurisy or a cough or other lung trouble, the evidence introduced by appellee tends to show that, while he was tall and spare and thin, yet he was in good health and free from cough and from any lung trouble till about six months before his

death. But further than that, Dr. Peck made this examination as the agent of appellant. Appellant introduced in evidence what is called part 3 of the application, which contains the medical examiner's detailed report, giving the height and weight of the applicant, his appearance, his temperature, the rate of his pulse, his chest measurement, his respiration; the examiner therein stated that he considered the applicant safely insurable and considered him, not a fair or good risk merely, but a first class risk. It is not claimed that Dr. Peck in any way colluded with the applicant or was in any way unfaithful to the duty he owed appellant as its medical examiner and agent. It is incredible that he could have honestly made such a report to appellant if Raymer had shortly prior thereto been in the condition described by appellant's witnesses. It also appeared that the mother and sister of Raymer's first wife had some feeling against him because of a financial transaction between them. The jury have believed the witnesses for appellee upon this subject and the trial judge has approved their verdict. We cannot say they should have found the other way.

But it is said that Raymer made a false answer when, to the ninth question, "When and by what physician were you last attended and for what complaint," he answered "None." It is not the ordinary use of the word to say that a physician is attending a person when he does not go to that person's house, but the person comes to his office for medical advice. It would not naturally be understood by an applicant for such a certificate as calling for information on that subject. If given that meaning, it would be a trap for the applicant. Probably there are very few persons of the age of Raymer who have not at some time gone to a doctor's office for medicine or advice concerning some ailment. Dr. Karcher did not tell Raymer that he had pleurisy and later that he had decided that he had pulmonary tuberculosis; and Raymer kept on at work all the time. Dr. Karcher did not testify how many times Raymer came to his office. Under this evidence we conclude that the answer to the ninth ques-

tion should not be considered untrue, nor known to be untrue, nor made with intent to deceive, nor made in bad faith.

In answer to question 16, Raymer stated that his parents had not had tuberculosis, and under the head of "Family Record" that his mother died of pneumonia. She died January 29, 1906, two months before this application. It is claimed by appellant that she had and died of tuberculosis and that Raymer must have known that fact. Samuel Raymer, the father, testified for appellant that Arthur's mother died of consumption and was ill of it a couple of years, and that Arthur was there twice during that time. Peerless Chapman testified to the same effect. Dr. Bushnell testified that he was in Freeport from June 1903, and treated Arthur's mother off and on thereafter while she lived and that during all the time he treated her, she suffered from pulmonary tuberculosis, and that the immediate cause of her death was a pulmonary hemorrhage; that he cautioned the family against contagion, and that he saw Arthur Raymer there during his visits; but he did not testify that he cautioned him or said anything to him about the disease. The proof for appellee showed that Raymer and his second wife, appellee, moved to Iowa in 1903, came back to Freeport in the Spring of 1904, moved to Mendota in January, 1905, and that from there to Stockton, and did not again live in Freeport till after the death of Arthur's mother, and that Raymer was almost never in Freeport during that time except in the spring of 1904, till January or February, 1906. There was no proof that Arthur's mother was confined to her bed till a comparatively short time before her death and no proof that Arthur was ever told that she had consumption. Dr. Karcher testified that at the request of Dr. Bushnell, who was absent from the city, he made several calls upon Arthur's mother about ten days before she died, and that she had acute pneumonia. The statement in the application, therefore, that the applicant's mother died of pneumonia was supported by the evidence of Dr. Karcher; and where doctors so materially differ as to the ailment,

the jury might reasonably find that it was not shown that Arthur knew that his mother had or died of consumption.

In answer to the 16th question, Raymer also answered that his sisters had not had tuberculosis. Appellant claims that Raymer's unmarried sister was sent to Montana because of symptoms of tuberculosis. There is no evidence justifying that position, and there is positive evidence that she at one time prior thereto had acute bronchitis and was treated therefor and recovered; and that she was afterwards examined for insurance shortly before she went to Montana, and that she did not have tuberculosis.

Raymer's first wife died of tuberculosis at the home of her mother on October 12, 1902, and from March, 1902, till about four months before October Raymer and his wife had occupied the same room and he cared for her, especially at night, and during that last four months was frequently in her room during the daytime. Appellant argues that his answer to question 22 in part 3 of the application was untrue and must have been known to him to be untrue. Appellee had pleaded that this part 3 was no part of the application and was not binding upon him. The first part of the certificate hereinbefore set out says that a copy of the application is thereto attached and made a part thereof, and that the certificate is issued in consideration of the representations, statements and answers made in said application. As we understand this record, part 3 has never been attached to the certificate, and therefore is not the application to which the certificate refers. It was not signed by Raymer. Dr. Peck testified in chief that he put that question to Raymer and wrote his answer down as he gave it. On cross-examination he stated that he had no recollection of reading it to him nor what his answer was, but that he only testified to his customary practice. He testified that this was not read to Raymer after it was written and Raymer never saw it afterwards. We conclude that said part 3 is no part of the application, and that appellant's pleas based thereon are not sustained, and that appellant has no defense growing out of the answer to said question 22.

The court refused all the instructions requested by appellee except one, which merely named the parties plaintiff and defendant. The court gave several instructions for appellant. It refused eighteen instructions requested by appellant. Some of them were properly refused because they treated the answers as warranties, whose untruth constituted a defense. They were all properly refused because they did not submit the question (which was material under every replication to the special pleas), whether Raymer knew the answers to be false, or acted in good faith, believing them to be true. Some of them were also properly refused for other reasons.

The judgment is affirmed.

*Affirmed.*