### Rebecca Woodruff, Appellee, v. Mutual Life Insurance Company of New York, Appellant.

1. INSURANCE—*conclusiveness of jury finding as to cause of death of insured.* The finding of the jury in an action on an insurance policy that insured died from an electric shock accidentally received in the performance of his duties as city engineer and not from chronic acute indigestion and heart affliction, as claimed by the insurer, is sustained by the evidence and is conclusive against the insurer, where it appears that insured was in charge of the city pumping plant which was operated by electric current, that to start the pumps it was necessary to connect an electric switch which could only be reached by deceased by standing on certain iron appurtenances of the pumps, that he was found dead in the pump house with his body in such position as to indicate that he was stricken while standing on the iron appliance in question and other evidence indicating death by electrocution.

2. INSURANCE—*when fraudulent concealment of condition of health by insured not shown.* Fraudulent concealment by one insured of the fact that he had suffered from acute indigestion and other diseases in addition to measles, which latter he stated in his application for insurance to be the only disease from which he had suffered since childhood, is not shown by evidence that about two and a half years before applying for insurance he had an attack of acute indigestion following the eating of potato salad, that he was treated for and recovered therefrom within a few days and that about two years later he had tonsilitis which did not confine

him to his bed and which yielded to two local treatments, where there is no evidence to show that either ailment was anything but a temporary disorder, that he ever suffered from either again, that either resulted in any impairment, or that his concealment of such disorders was fraudulent or intentional, and a finding to that effect by the jury is supported by the evidence and is conclusive against the special defense of such concealment in an action on the policy.

3. INSURANCE—*clothing worn by insured at time of death as admissible to show cause of death in action on policy.* In an action by the beneficiary to enforce a policy of life insurance, it is competent to permit the shoe worn by deceased at the time of his death to be cut open in the presence of the jury and the inside thereof examined for evidences of electric burns, on the issue of whether death was caused by acute indigestion as claimed by the insurer or accidental electrocution.

4. INSURANCE—*when evidence of reputation of insured for truth and veracity admissible in action on policy.* In an action by the beneficiary to enforce a life insurance policy, evidence of the reputation of the insured for truth and veracity is admissible where the insurer defends the suit on the ground that insured made certain false statements in his application, knowing them to be false and with intent to defraud the insurer.

Appeal by defendant from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed April 23, 1923. Rehearing denied June 26, 1923. *Certiorari* denied by Supreme Court (making opinion final).

WINSTON, STRAWN & SHAW, WILLIAM MUMFORD and BARRY MUMFORD, for appellant; SILAS H. STRAWN and JAMES H. WINSTON, of counsel.

WILLIAMS & WILLIAMS, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

The appellee, Rebecca Woodruff, as beneficiary of a life insurance policy for $2,000 on the life of her son, Carl R. Woodruff, who had deceased, commenced this suit in the circuit court of Pike county against the appellant, the Mutual Life Insurance Company of New York, to recover the amount for which the policy had

been issued. The declaration was filed in the suit, which is in the usual form alleging a breach of the insurance contract. In defense the appellant pleaded the general issue, and a number of special pleas embodying matters of defense relied upon as a bar to a recovery on the policy. The first trial of the case resulted in a verdict and judgment for the appellee, from which an appeal was prosecuted to this court, and the case was reversed and remanded. [223 Ill. App. 464.] After reinstatement of the cause, a second trial also resulted in a verdict finding the issues in favor of the appellee, assessing her damages at $2,251.11, the amount of the policy and interest. The appellant made a motion for a new trial, which was denied, and a judgment was rendered on the verdict. From this judgment an appeal is now prosecuted.

Several matters of defense are set up in the special pleas and relied upon as a defense to the recovery: That the insured made certain false and fraudulent statements in his application for insurance which were material to the risk assumed by the appellant in issuing the policy, that is to say, that he stated in answer to certain questions in his application, which was a part of the insurance contract, that he had had no illness or disease since childhood, except an attack of the measles; and that he had not consulted or been treated by any physician or practitioner with reference to any illness or diseases within five years prior to his application for insurance, when, as a matter of fact, the insured had been suffering from and was "diseased and afflicted with indigestion and with heart obstruction resulting therefrom, and in a weakened physical condition and a condition of physical impairment occasioned and caused by said disease and affliction, and by repeated attacks thereof; and that said insured had consulted divers physicians and practitioners within five years next preceding the date of the application and had been treated and prescribed for in consequence of said disease and affliction and other dis-

216        Appellate Courts of Illinois.

Woodruff v. Mutual Life Ins. Co. of N. Y., 229 Ill. App. 213.

eases''; and that the insured never recovered from said disease and affliction, but died therefrom. And it is also alleged in the pleas, ''that the insured for more than five years prior to his application was continuously and seriously affected and afflicted with and suffering from a disease, weakness and physical impairment, of which the insured then and there had full knowledge; * * * that for more than five years continuously insured was affected and afflicted with frequent and recurrent and serious attacks of acute indigestion, which were dangerous to his life, and during all of said five-year period insured was afflicted with and his health impaired by serious physical weaknesses and impairments of his stomach and other parts of his body, which predisposed him to and frequently caused dangerous attacks of acute indigestion, with attendant heart disturbance and obstruction, all of which facts were then and there well known to the insured; and that said physical impairments and weaknesses continued from the date of application to the time of his death.'' It is also set up as a matter of defense in the pleas that one of the conditions of the policy required that the insured should be in good health at the time of the delivery of the policy, otherwise the policy was to be null and void, and it is averred that the insured was not in good health when he received the policy and thereby the policy was avoided. Another matter of defense set up is that the policy prohibits the insured from engaging in an employment which necessitates the handling of electric wires, without the express permission of the appellant; that he did engage in such employment without such permission and thereby avoided the policy.

The evidence shows that at the time of his application for insurance, April 22, 1919, the insured was a young man about twenty-three years of age, a machinest by occupation, and had recently been discharged from the navy, subject to a recall for three years for service; and that in the month following his applica-

tion he entered the employ of the City of Barry, in the three-fold capacity of marshall, street commissioner and city engineer. And that the insured met his death while in the performance of his duties as city engineer on October 17, 1919. One of his duties as city engineer was to look after the pumping of water for the use of the City of Barry. The pump was located in the city pump house and was operated by electric power. In order to start the pumping it was necessary to adjust two metal levers, which controlled the switching of the electric current which had a voltage of 2,300. One of the levers was located near the ceiling in about the center of the south side of the pump house; this was usually reached by stepping on a flatiron valve about eighteen inches above the floor, and on top of an iron water pipe. Standing on this valve, it was necessary to reach up and pull down the lever, and thereby connect the wires coming in from the outside with the wires on the inside of the building which ran down to a compensator, and after making this connection, the electric current was then switched into the compensator by means of another lever located on the compensator. These two connections started the pumping. The evidence tends to show that death came to the insured suddenly. He was found dead in the pump house, lying on the floor with his feet near the valve, on which he had probably been standing at the time he was stricken. Whether his sudden death was caused by an attack of acute indigestion, or from an electric stroke and shock, by accidentally coming in contact with the electric current while manipulating the lever referred to, was a controverted question of fact in the case. The jury evidently reached the conclusion that the latter cause was the cause of death. Taking into consideration the various matters shown by the evidence which indicated a contact of the body of the deceased with the electric current, the conclusion reached by the jury is a reasonable one and fully warranted by the evidence.

Concerning the matter of the disease which the insured is alleged to have fraudulently concealed, it appears from the evidence that about two years and a quarter before the time of his application for insurance, the insured had a severe attack of acute indigestion while visiting at the house of a young lady on whom he had called. This young lady was a witness in the case and testified that he had eaten potato salad for supper, and that this did not seem to agree with him. He ate supper about six o'clock in the evening and was taken ill about nine o'clock, and went home in great distress. Dr. Beaver, a physician of Barry, was called to the home of the insured that night and gave him medicine to relieve this attack, and did relieve it, and the insured recovered within a few days. His sister-in-law, who waited on him during this sick spell, testified that he got up in the afternoon of the next day and walked two miles to Barry and walked back. After the night in question, Dr. Beaver was not called upon to treat the insured again until after a lapse of over two years. At that time, which was about a week before his application for insurance, the deceased had tonsilitis, and he went to Dr. Beaver's office and had two local treatments for this ailment, and these two treatments were apparently sufficient to do away with this trouble. There is no evidence to show that the ailments referred to were anything more than temporary disorders. And the doctor testified, as to the insured's condition of health at that time: "He appeared to be a strong, healthy young man. I had no reason to believe otherwise." The evidence does not show that the insured had any recurrence of the attack of acute indigestion referred to. There is some evidence tending to show that he may have had other casual disorders of the stomach prior to his application for insurance. But the evidence does not justify the inference that any of the ailments referred to were chronic in character; that they impaired his constitution, or left behind them an organic disease; or that

they impaired his general health so as to render the
risk assumed by the appellant unusually hazardous.
Temporary disarrangements or ailments are not con-
sidered material to the risk. Misrepresentations not
material to the risk would not necessarily avoid the
policy. *Masons' Benevolent Society v. Winthrop*, 85
Ill. 537; *Illinois Life Ins. Co. v. Lindley*, 110 Ill. App.
161; *Miner v. New Amsterdam Casualty Co.*, 220 Ill.
App. 74; 25 Cyc. 814-817.

It is pertinent to suggest, however, that in this
case, as in the case of *Minnesota Mut. Life Ins. Co. v.
Link*, the alleged false statements of the insured, being
merely representations and not warranties, the "ap-
pellant could not rest a defense upon such statements
without averring and proving their materiality and
that they were known to be false by the assured at the
time they were made." *Minnesota Mut. Life Ins. Co.
v. Link*, 230 Ill. 273. It is not unreasonable to assume,
on the question of the misrepresentations claimed to
have been fraudulently made by the insured, that for
aught that appears in evidence, the insured, in failing
to disclose the fact that he had an attack of acute in-
digestion and an attack of tonsilitis, and that he had
had other temporary disorders before the time of his
application for insurance, and the treatments and
medicine which he had taken therefor from physicians,
could very well have had the idea that the temporary
disorders were not matters concerning which the in-
surance company wanted and required information.
*Globe Mut. Life Ins. Ass'n v. Wagner*, 188 Ill. 133;
*Raymer v. Modern Brotherhood of America*, 157 Ill.
App. 510; *Mueller v. New York Life Ins. Co.*, 221 Ill.
App. 420. And it is sufficient to say, concerning this
feature of the case, that the matters of defense claimed
were embodied in the special pleas upon which issue
was joined, and thereby became questions of fact for
the jury to pass upon and determine, and that the jury
did pass upon these matters in issue adversely to ap-
pellant's contention, and we are of opinion that the

jury were warranted in the conclusions which they reached from the evidence.

We find no reversible error in the admission or rejection of evidence on the trial. It was competent and proper to allow the shoe which the deceased had worn at the time he was stricken to be cut open in the presence of the jury to bring the inside of the shoe into view, so as to ascertain whether there were any evidences of electricity burns in the shoe. Nor was it erroneous to admit evidence of the general reputation of the insured for truth and veracity. The appellant charged by its pleas that the insured made certain false statements, knowing them to be false, and with an intent to defraud the appellant. His character for truthfulness and veracity was thereby put in issue in the case. "Where the nature of the action is such that the character of one of the parties, or of a third person, is put in issue, evidence of character is admissible." 22 Corpus Juris, 472, sec. 562; 1 Greenleaf on Evidence, 72, sec. 54; *Askey v. New York Life Ins. Co.*, 102 Wash. 27, L. R. A. 1918F 267; *Rasmusson v. North Coast Fire Ins. Co.*, 83 Wash. 569, L. R. A. 1915 C 1179.

We find no errors in the giving or refusal of instructions. The instructions for the appellant are unusually elaborate and complete statements of the law applicable to the defense and governing the matters pleaded in the special pleas, and were as favorable to the appellant's side of the controversy as it was entitled to have them. The record does not disclose any reversible error and the judgment is therefore affirmed.

*Judgment affirmed.*