## Sophia Berner et al., Appellees, v. Brotherhood of American Yeomen, Appellant.

### Gen. No. 5255.

1. FRATERNAL BENEFIT SOCIETIES—*effect given to insurance contract.* If the contract between the society and the member is free from ambiguity, whether reasonable or unreasonable it will be enforced by the courts.

2. FRATERNAL BENEFIT SOCIETIES—*burden of proof to show deductions to be made from face of policy.* If the contract between the member and the society provided for certain deductions to be made in the event of such member's not living out her expectancy of life and if the amount of such deduction can be arrived at by mere computation and the proof is equally in the possession of each of the parties to the litigation, the obligation is upon the plaintiff to supply such proof in order to show how much he is entitled to recover under the certificate in suit.

3. FRATERNAL BENEFIT SOCIETIES—*what does not render statements in application warranties.* The mere fact that the words "warranties" and "warrant" occur in the printed portion of a benefit certificate and of the application, does not necessarily render the statements made by the insured in the application warranties. *Held,* in this case, that in view of all the language used in the certificate and the application, that the statements made by the insured were merely representations and not warranties.

4. EVIDENCE—*who may testify as to state of health.* Opinions may be given by non-expert witnesses as to the state of health, hearing or eye sight of another, etc.

Assumpsit. Appeal from the City Court of Elgin; the Hon. ED-WARD M. MANGAN, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed March 11, 1910.

P. C. TYRRELL and JOHN D. DENISON, JR., for appellant.

R. H. KRAMER and IRWIN & EGAN, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Ella Berner, the daughter of appellees, made an application for membership in the Brotherhood of American Yeomen, appellant, on August 24, 1907, appellant being a fraternal society organized under the laws of the state of Iowa. The applicant was examined by a physician, acting for the appellant society; her application was approved by appellant; and, on September 18, 1907, she became a member of Homestead No. 1389, one of the subordinate bodies of the appellant, located at Elgin, Illinois. Thereafter the insured paid all assessments due from her to the appellant, according to the terms of her contract of insurance, up to July 14, 1908, when she died of consumption. This was an action of *assumpsit*, brought by Sopha Berner and Christ Berner, the parents of the insured, to recover upon the benefit certificate issued to insured, wherein the plaintiffs below were named as beneficiaries. The declaration consisted of one count, based upon the benefit certificate, to which there was a plea of the general issue, a special plea setting up that the insured warranted that she was in good health and had never had consumption, that the said certificate was issued in reliance upon such statement by the assured, whereas said statements were false in that said insured had been afflicted with consumption, and that because of said falsehood said certificate was void; and another special plea to the effect that the execution and delivery of said certificate was obtained from

appellant by fraud, in that the said insured falsely represented that she had never had consumption and that appellant issued said certificate in reliance upon such false representation. Issues of fact were made up on these special pleas. There was a trial and a verdict for plaintiffs below in the sum of $1,000; motions for a new trial and in arrest of judgment were denied and plaintiffs below had a judgment; from which defendant below appeals.

The first part of the benefit certificate provides for the payment of the sum of one thousand dollars to appellees as beneficiaries, within ninety days from receipt of satisfactory proof of death of the insured and the surrender of said certificate for cancellation, less all amounts previously paid under the provisions of the 2nd, 3rd, 4th and 5th clauses, none of which clauses are material to the questions here discussed. Thereafter the certificate reads as follows:

"This certificate is issued and accepted upon the following warranties, conditions and agreements:—
* * *

Third. That should said member die before having lived out his expectancy of life, based on his age at entry, according to the American Experience tables of Mortality, there shall be paid into the reserve fund of this Association, out of the proceeds of this certificate, otherwise payable to the beneficiary, a sum equal to the amount of twelve assessments per year, at the rate last paid by the member for the unexpired period of such like expectancy, based on his age at entry, and any accident or disability benefits to which he may become entitled shall be subjected to proportionate deductions for the reserve fund to be used in the payment of assessments in any year in excess of the amount required for the payment of six deaths to the thousand members in good standing."

This certificate was issued September 18, 1907, at which time the nearest birthday of the insured was her twenty-third. She died at the age of twenty-three years and six months, and it is a matter of common

knowledge that she did not live out her expectancy of life, and, in fact, that such expectancy would not expire for many years. This being so, under the terms and conditions of this contract of insurance, there must be deducted from the face value of the certificate and placed in the reserve fund of the association a sum equal to the amount the insured would have paid if she had made payments at the rate of seventy-five cents per month from July 14, 1908, to the date on which her expectancy of life at the date of insurance would expire. If the insured had lived to that age which was then her expectancy of life, the full amount of $1,000 would have been payable to her beneficiaries. But, as she did not live out her life expectancy, the payments she would have made from the date of her death to the end of her life expectancy are not recoverable by the beneficiaries, but are to be taken out of the sum of $1,000 and placed in the reserve fund of the society. This is the meaning of the third clause, as we interpret it. This was a part of the contract of insurance, entered into and agreed to by both of the parties, and, whether reasonable or unreasonable, it must be enforced here. Luckey v. Yeomen of America, 141 Ill. App. 332.

No proof on this subject was introduced by either side. Appellees contend that the burden of proving the necessity for such a deduction from the face value of the benefit certificate and the amount of such deduction, as figured by reference to the mortality tables, rested with appellant, and that, in the absence of proof on that subject, they are entitled to recover the full amount. In support of this position they cite Windover v. Metropolitan Accident Assn., 137 Ill. 417, and Covenant Life Assn. v. Kentner, 188 Ill. 431. We do not regard those cases as applicable here. In each of those cases there was no certainty that a reduction from the face value of the insurance contract would become necessary, and the amount of the reduction, if any, depended upon information which was solely in

the possession of the association. It was therefore held in those cases that the right to a reduction was a matter of affirmative defense and should have been proven by the society, and that, in the absence of such proof, the beneficiary was entitled to recover the full amount of the insurance contract. Here, we must assume that the American Experience Tables of Mortality have been published and are as much within the reach of appellees as of appellant. It is entirely clear that the insured did not live out her term of expectancy; that, therefore, according to the terms of the insurance contract, her beneficiaries were not entitled to recover the full sum of $1,000; that the amount of the deduction to be made from that sum was a mere matter of computation, on the basis of so many years of expectancy for which insured had not paid, and which should be paid for at the rate of seventy-five cents per month or $9.00 per year; and that this proof was within the reach of either party. We conclude that this proof should have been made by appellees as part of the proof necessary to show how much they were entitled to recover. We therefore feel obliged to return this cause to the lower court for further proceedings in conformity with the views here expressed.

It is contended by appellant that certain answers made by the insured to interrogatories propounded to her in the application for membership were warranties and not representations; and that such answers were false and rendered the policy void, and that these breaches of the warranties should prevent the beneficiaries from recovering in any sum whatever. Appellees claim that such answers were mere representations and not warranties, and, further, that if there be any doubt as to whether the answers given were warranties or representations, then, as a matter of law, the doubt should be resolved in favor of the appellees and said answers should be treated and held as representations only, since warranties are not favored in this class of cases, and all doubts are re-

solved in favor of the insured or the beneficiary, and forfeitures are not favored by the law.

The answers made by the insured, which appellant claims are false and constituted breaches of warranty, were made in her application for membership, under the heading: "Warranties of application for membership in the Brotherhood of American Yeomen, Des Moines, Iowa," were signed by the insured, and consisted of statements that she was in good health at that time, and that she had never had consumption; and the further statement, appearing on the face of the application and signed by the insured, as follows:

"I hereby warrant and declare that I am in good health and that no change has occurred in my condition as set forth in my application, and I accept this benefit certificate and agree to all the conditions herein contained."

The mere fact that the words "warranties" and "warrant" occur in the printed portions of the benefit certificate and of the application does not necessarily render the statements made by the insured in her application warranties. Court of Honor v. Clark, 125 Ill. App. 490. We must therefore consider the question whether these statements were warranties or mere representations, by reference not only to the wording of the benefit certificate, but also to all the language used in the application, the printed part of which was prepared by appellant, and which is declared to be a part of the contract.

In Continental Life Ins. Co. v. Rogers, 119 Ill. 474, the court said: "It is generally true, that where the application is expressly declared to be a part of the policy, and the statements therein contained are warranted to be true, as was the case here, such statements will be deemed material, whether they are so or not, and if shown to be false, there can be no recovery on the policy, however innocently made, and notwithstanding their falsity may have no agency in causing the loss or producing the death of the assured.

(Citing cases.) While this is true as a general rule, still there are cases to be found in which the statements in the application have been held to be representations merely, notwithstanding they were expressly declared to be warranties, as they are here.'' The court then referred to and quoted from Fitch v. A. P. & L. Ins. Co., 55 N. Y. 557; and continued as follows: ''Under this state of facts, one of the questions made in the case was, whether the statements in the application were warranties or merely representations, and it was held they were the latter. The conclusion reached seems to have been placed mainly on two grounds, namely, first, because the good faith and honest intentions of the contracting parties are so studiously and conspicuously kept in the foreground of the transaction; second, it was thought that because of the frivolous character of many of the questions and answers, and the difficulty, if not impossibility, of proving many of them after the death of the assured, it could not have been intended to give them the force and effect of absolute warranties. * * * The statement in the policy that the answers, statements, etc., in the application, etc., are warranties by the assured to be true in all respects, is followed by the additional statement, that if this policy has been obtained by or through any fraud, misrepresentation or concealment, said policy shall be absolutely null and void. 'It is clear, the fraud, concealment and misrepresentation here contemplated can have no application to anything other than the answers to the questions in the application. If true and full answers, there could be neither fraud, concealment nor misrepresentation, and if not full and true, upon the hypothesis that they were warranties, the assured would incur a forfeiture of the policy, whether there was any intentional misrepresentation or suppression of the truth or not. If the answers, however, are simply representations, as contradistinguished from warranties, in the technical

sense of those terms, then such of the answers, not material to the risk, as were honestly made, in the belief that they were true, would not be binding upon the assured, or present any obstacle to a recovery. It is clear, therefore, that the only way in which to give that provision of the policy relating to fraud, concealment and misrepresentation, any effect at all, is by treating the answers in the policy as mere representations, and not warranties.''

In Moulor v. American Life Ins. Co., 111 U. S. 335, the insured made a false statement as to his having had certain diseases and warranted that his answers were fair and true. The court there said: ''The entire argument in behalf of the company proceeds upon a too literal interpretation of those clauses in the policy and application which declare the contract null and void if the answers of the insured to the questions propounded to him were in any respect untrue. What was meant by 'true' and 'untrue' answers? In one sense, that only is true which is conformable to the actual state of things. In that sense a statement is untrue which does not express things exactly as they are, but in another and broader sense the word 'true' is often used as a synonym of honest; sincere; not fraudulent. Looking at all the clauses in the application, in connection with the policy, it is reasonably clear—certainly the contrary cannot be confidently asserted—that what the company required of the applicant as a condition precedent to any binding contract was, that he would observe the utmost good faith towards it, and make full, direct and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation or concealment of facts with which the company ought to be made acquainted, and that by so doing, and only by so doing, would he be deemed to have made fair and true answers.''

In Minnesota Life Ins. Co. v. Link, 230 Ill. 273, the court said: ''While the law will permit parties com-

petent to contract to insert any provisions that they see proper which are not contrary to law or good morals, still where it is contended that warranties have been inserted in an insurance contract the effect of which will inevitably be to defeat it in the end, such intention must be so clearly and unequivocally expressed as to leave the court with no other alternative but to so construe the contract. If the language employed is ambiguous and doubtful, or if there is another reasonable construction that may be placed upon it and thus avoid the consequences of a warranty, courts are inclined to adopt the latter construction.''

In the case last quoted from the court refused to hold as warranties the answers made by the applicant, in which he stated that he was in good health and physically sound at that time and that he had never suffered from chronic cough or from some sixty other enumerated diseases, but held that they were merely representations. In Spence v. Central Accident Ins. Co., 236 Ill. 444, the court said, in relation to certain answers in the application for insurance which the company sought to uphold as warranties: ''The doctrine of warranty, in the law of insurance, is one of great rigor and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction.''

In McClain v. Providence Savings Life Assn., 110 Fed. Rep. 80, the court said: ''The practical operation of such literal warranties is so often harsh and unfair that courts require their existence to be evidenced clearly and unequivocally, and are not inclined to allow it to rest upon a mere verbal interpretation where a reasonable construction of a contract as a whole will authorize a different meaning. All reasonable doubts as to whether statements inserted in or referred to in an insurance policy are warranties or representations should be resolved in favor of the insured.''

In the case of Globe Mutual Ins. Co. v. March, 118

Ill. App. 261, the applicant stated in his answers to interrogatories that his mother died from heart failure, while the evidence showed that she died of consumption. The court there held that, in the absence of proof of knowledge on the part of the applicant that his said answer was false, it could not be held to avoid the policy, and that such an answer was a mere representation, and if false, such falsity must be shown to have been known by appellant.

While the benefit certificate in the case now before us contained the words "warrant" and "warranties," yet the application, which was made a part of the certificate, also contained the following: "I agree that any untrue answer to any question on this application blank, or concealment, misrepresentation or suppression, relative to my personal or family history, condition or habit, past or present, whether believed by me to be material or not, shall immediately, without process, render the certificate issued hereon null and void, and in such event I agree to forfeit both such certificate and all payments that shall have been made thereon." The language above quoted from Continental Life Ins. Co. v. Rogers, *supra,* is applicable to the use of the words, "concealment, misrepresentation or suppression," and tends to show that the society did not rely upon a warranty that the answers were true and that any untrue answer should avoid the certificate. In another part of the application was the question: "Have you ever had any of the following?" followed by a list of sixty-six diseases; to which the applicant answered "No." Of a similar question and list of diseases, the Supreme Court in Minnesota Life Ins. Co. v. Link, *supra,* said: "It is not reasonable to suppose that Miller took this policy with the distinct understanding that it would be void and that all premiums paid by him on it were a mere gratuity conferred upon the company, and yet if the absolute truth of all of the answers to the more than three-score questions was warranted there is scarcely a probability

that any liability could ever accrue on such policy. It is well known, as is observed by the Supreme Court of the United States in Moulor v. American Life Ins. Co., 111 U. S. 335, that a person may have diseases of the presence of which in his system he has and can have no knowledge and which even skillful physicians are unable to discover after a most searching examination. It is therefore unreasonable that persons who organize corporations for the purpose of selling life insurance would exact a warranty of an applicant for insurance of the truth of a matter which, from the very nature of the inquiry, might be wholly unknown to the applicant, and still more unreasonable that any sane person would knowingly warrant that he had never had, in any form or any degree, any disease embraced within the long catalogue embodied in this application.''

In view of all the language used in the certificate and the application, considered and construed in the light of the authorities above cited, we conclude that the statements made by the insured in the case before us were merely representations and not warranties.

In a number of instances witnesses who were not physicians and not experts were asked questions by appellant concerning the condition of health of the insured and objections were sustained thereto, apparently on the ground that such opinions could only be given by physicians or experts. Some of these rulings were erroneous. It was held in West Chicago St. Ry. Co. v. Fishman, 169 Ill. 196, that witnesses not experts are allowed to express opinions when the subject-matter to which the testimony relates is such in its nature that it cannot be reproduced and described to the jury precisely as it appears at the time. Opinions may be given by non-expert witnesses as to the state of health, hearing or eyesight of another, etc. See also cases there cited. This ruling was upheld in Chicago & Eastern Ill. R. R. Co. v. Randolph, 199 Ill. 126; I. C. R. R. Co. v. Prickett, 210 Ill. 140; City of

Chicago v. McNally, 227 Ill. 14. In Greinke v. Chicago City Ry. Co., 234 Ill. 564, the court said: "It has been held that witnesses who are not experts may express their opinions as to the physical condition of persons whom they have observed,—that is, they may state whether, in their opinion, such persons are in good health, have the ability to perform work, whether they are suffering pain, are conscious or unconscious, in possession of their mental faculties," etc.

Complaint is made by appellant because the trial court refused to admit in evidence a certified copy of the original certificate of the death of the insured. All that was required by law to be certified was the fact that the insured was dead. That fact was proved as a part of appellees' case, and it was not error to refuse to admit the certificate, which contained other statements not required by law to be certified.

For the reasons stated above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*