## Lottie B. Turner, Appellee, v. Modern Woodmen of America, Appellant.

## Gen. No. 5,862.

1. INSURANCE, § 761*—*when benefit society cannot claim answer in application was false.* Where an applicant for membership in a benefit society made true statements to the society's examining physician and the physician wrote an inaccurate answer in the application, a defense that the answer was false cannot be maintained in a suit on the certificate by the beneficiary to recover insurance.

2. INSURANCE, § 793*—*when benefit society estopped to claim forfeiture of certificate for false answer in application.* Where an application was addressed to a local camp of a benefit society as well as to the head camp, *held* that the head camp was estopped to claim a forfeiture of the certificate by reason of false answers in the application, where the local camp with full knowledge of a false answer in the application voted to make the applicant a member, accepted his dues and remitted the same to the head camp.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Turner v. Modern Woodmen of America, 186 Ill. App. 404.

3. INSURANCE, § 761*—*when applicant by signing and delivering application does not warrant answers to be true.* An applicant by signing the application and delivering it to the society does not warrant the answers to be true, though directly beneath his signature was the following printed words: "A copy of your application for membership is attached to this certificate—Read it—. If any answer or statement therein is not correct, notify the Head Clerk at once." ,

4. INSURANCE, § 761*—*when examining physician is agent of benefit society.* A regular examining physician of a benefit society is the agent of the society, and the society is bound by his acts within the scope of his authority notwithstanding an express stipulation in the application that the applicant makes him his agent.

5. INSURANCE, § 889*—*when evidence of conversation with member concerning his health competent.* In an action on a benefit certificate to recover insurance, sustaining an objection to an offer to prove by a witness a certain conversation with the member concerning his health shortly before the application was made, *held* error.

6. INSURANCE, § 889*—*when declarations of member admissible in suit by beneficiary on certificate.* Declarations made by the member of a benefit society against his interest are admissible in evidence against the beneficiary in a suit by the beneficiary upon the certificate after the death of the member.

7. INSURANCE, § 887*—*admissibility of application and examination of member by another lodge.* In an action by a beneficiary on a benefit certificate where the defense was that the member made false answer in his application concerning his health, defendant offered in evidence a previous application of the deceased member to another lodge, and attached thereto was an examination by the physician of such lodge in which he stated that he considered the applicant a second-class risk, etc. *Held* that the application was competent but that the physician's examination not signed by the applicant was incompetent because not under oath.

8. TRIAL, § 83*—*when calling witness after close of case should be permitted.* Where defendant, after it closed its case and plaintiff had closed its rebuttal, called an expert witness, without previously having revealed to the court that it had an absent witness and asking permission to call him, but counsel upon calling such witness stated that the witness had been absent making professional calls and could not be obtained, *held* that unless the court had some reason to doubt the truthfulness of counsel's statements he should have been permitted to testify in the interest of justice, and that although the court permitted him to testify to certain things his examination was unduly restricted.

9. PLEADING, § 136*—*effect of going to trial without written rejoinder*. Where parties go to trial without any written rejoinder of issues upon certain replications to a plea, the case is treated as if there were oral denials of the replications.

10. APPEAL AND ERROR, § 1456*—*when striking of rejoinders from files harmless*. Where parties go to trial without any written rejoinder of issues upon replications, and special rejoinders are filed without leave of court and without the knowledge of plaintiff, *held* that the striking of such rejoinders from the files at a later term did not harm the defendant.

Appeal from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed May 1, 1914.

TRUMAN PLANTZ, GEORGE G. PERRIN and JAMES J. CONWAY, for appellant.

R. D. MILLS and M. N. ARMSTRONG, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Modern Woodmen of America, a fraternal beneficiary society, issued to George Arthur Turner a certificate wherein it agreed to pay to his mother, Addie L. Turner, and to his sister, Lottie B. Turner, each one thousand dollars in case of his death while a beneficial member of said society in good standing, which certificate was dated February 2, 1909. Turner died on July 25, 1910, of pulmonary tuberculosis. His sister, Lottie B. Turner, brought this suit to recover the sum payable to her by the terms of said certificate and filed an appropriate declaration. There were many pleas, replications and rejoinders. The society claimed that the statements in Turner's application were warranties and that certain of them were false. The beneficiary denied the falsity of the statements and set up various matters by way of waiver and estoppel. It is sufficient to say of the pleadings that all the positions taken herein by the parties were suffi-

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

ciently pleaded, unless it be certain matters set up by way of rejoinder. The beneficiary had a verdict and a judgment for one thousand dollars, from which the society appeals.

Appellee contends that the statements in the application are representations and not warranties, and relies upon such cases as *Minnesota Mut. Life Ins. Co. v. Link*, 230 Ill. 273, and other cases considered by this court in *Berner v. Brotherhood of American Yeomen*, 154 Ill. App. 27, and *Raymer v. Modern Brotherhood of America*, 157 Ill. App. 510. All the expressions found in the applications in those cases, and relied upon by the courts of Illinois to sustain the position that such statements are representations and not warranties, have been with great care excluded from the language of this application, except that part of the medical examination which inquires if the applicant ever had any of fifty specified diseases, among which are ague, catarrh and dyspepsia. If the answer to that question is a warranty and must be literally true and covers the entire period of the applicant's life, then it is obvious that after any member had paid his dues during his lifetime, the society can probably defeat any recovery upon the certificate by finding some physician or nurse or grandmother who will remember that the applicant in his infancy or early childhood had some of these complaints. But the answers which are here complained of do not relate to said *omnibus* question, except the answer relating to consumption, and the other language of said application is so specific that we conclude that as to all statements here involved, except perhaps as to consulting a physician within seven years, they should be held warranties, under *Crosse v. Knights of Honor*, 254 Ill. 80.

The eleventh question put to Turner, the applicant, was: "Have you ever been rejected by any * * * fraternal beneficiary society?" The answer was "No." Turner had applied for membership in the Mystic

Workers of the World, a fraternal society, and that application had been rejected on July 15, 1907. The local lodge of appellant at Deer Park, in LaSalle county, was known as "Mercer Camp, No. 2967," and Turner's application to appellant was for membership in the head camp and in Mercer Camp. Dr. A. C. Rhiel was the Camp physician and he made the medical examination. He was a witness and he admitted that when he asked the foregoing question of Turner, the latter answered in substance as follows: "I don't know. I have applied to the Mystic Workers for insurance but I have never heard anything from them." At that time Howard Bennett was consul of said Mercer Camp and C. J. Clark was its clerk. Bennett was present when this application was filled out and when this medical examination was held, and he testified that, in answer to this question, Turner said: "I don't know;" that Dr. Rhiel said that answer was not permitted, and Turner then said: "I made application to the Mystic Workers some time ago;" and that he had been examined by the examining physician of the Mystic Workers, but had never heard from the physician or the company; and that there was then a discussion about the matter and Dr. Rhiel wrote some answer upon the paper and after the medical examination was completed, Turner picked up the examination paper filled out by the physician and glanced at it and then signed it. Dr. Rhiel testified in general terms that he wrote the answers which Turner gave him, but in regard to this particular question he stated that after Turner answered that he had applied to the Mystic Workers for insurance, but had never heard from them, there was a conversation between himself and Bennett and Turner as to how the answer should be filled out, and he finally wrote the answer which was the conclusion of himself and of the others. There was no proof that Turner had ever been notified that he had been rejected by the Mystic Workers. Clark, at the time Turner made his application to the

Mystic Workers, was the officer of that body whose duty it would have been to notify Turner of his rejection, if any such notice was given, and he testified that he did not mail any notice or rejection to Turner, and that he had no knowledge that Turner knew that he had been rejected. Therefore, so far as appears, Turner told the Camp physician the exact truth in answer to this question. Under the rules of law prevailing in this State, the regular examining physician of such a society is the agent of the society and the society is bound by his acts within the scope of his authority, notwithstanding an express stipulation in the application that the applicant makes him his agent.

In *Royal Neighbors of America v. Boman*, 177 Ill. 27, the medical examiner asked the applicant to answer the question whether she had ever had bronchitis, and she answered that she had had an attack of acute bronchitis, and the physician said that was of no consequence and wrote the answer "No." The court held that he was acting in the interests of the order and that his knowledge must be held to be the knowledge of the order. The Court said: "Where one makes true answers to the questions in an application for insurance, the validity of the insurance is not affected by the falsity of the answers inserted by the agent of the company, even though the application contained a stipulation that the agent took the application as the agent of the insured." In *Provident Sav. Life Assur. Soc. v. Cannon*, 201 Ill. 260, it was held that notice to the agent at the time of the application of facts material to the risk is notice to the insurer and will prevent it from insisting on a forfeiture for causes within the knowledge of the agent. The Court said: "Where the assured discloses facts to the agent, and the agent undertakes to fill out the application, and instead of stating the facts as they are disclosed to him inserts in lieu thereof conclusions of his own, the insurance company will not be permitted to insist that

the words of the agent, and not of the assured, are warranties, rendering the policy void.''

The same rule was applied in *Farrenkoph v. Holm,* 237 Ill. 94, where the applicant told the agent that he was engaged to marry the proposed beneficiary, and the agent wrote down that the beneficiary was a cousin of applicant, which was not true. It was held that the validity of the benefit certificate was not affected by the false answer inserted by the agent, but that the agent's knowledge of the facts bound the society. In *Johnson v. Royal Neighbors of America,* 253 Ill. 570, one of the questions required to be asked of the applicant by the company physician was whether she had ever had ''la Grippe'' and the answer ''No'' was written. It was proved that the application was taken by an assistant deputy, and that when that officer asked the applicant this question she replied that she had been treated by physicians and had taken patent medicine for the ''grippe'' and that officer said that did not count, and wrote the answer ''No.'' Thereafter another party examined the same applicant, and she told that officer of illnesses she had had and treatments she had taken from physicians, and he wrote answers contrary to the true answers made by her. It was held that the parties taking the application were the agents of the society, and that by the conduct of the agent the society waived its right to object to the validity of the certificate on the ground that the answers were warranties. Since Turner stated the truth to the camp physician and the latter wrote an inaccurate answer, the defense that said answer was false cannot be maintained.

But the evidence seems to furnish another answer to the position here taken by appellant. Mercer Camp was the agent of appellant. The application was addressed to it as well as to appellant. It had to be first voted upon by Mercer Camp. The question whether Turner should be admitted to the order was brought up in a meeting of Mercer Camp. It is fair to assume

that this application, addressed to the Camp, was there present. Several members then present, and some of them officers of Mercer Camp, were also members of the Mystic Workers and were or had been officers thereof, and they knew that Turner had been so rejected by the Mystic Workers. They stated in that meeting of Mercer Camp that Turner had been so rejected by the Mystic Workers, and that matter was there discussed, and an officer of the Mystic Workers, then present, was asked to state the cause of his rejection, and he replied that it was unrevealable. With full knowledge of this rejection, the Camp voted to admit Turner as a member. Morover, Turner was required to and did pay all his dues to Mercer Camp, and the latter remitted the same to the head camp, that is, to appellant, with full knowledge that Turner had been rejected by the Mystic Workers. It would seem that the knowledge and acts of the Camp ought to bind this society. In *Order of Foresters v. Schweitzer*, 171 Ill. 325, where the member was a bartender, and therefore not entitled to insurance at the rate he was paying, the Court said: ''In associations of this character the relation of the members to the order is necessarily through the subordinate lodges, and when a forfeiture of the certificate of insurance is insisted upon, it is proper to show that the subordinate lodge, with full knowledge of the alleged cause of forfeiture, continued to treat the insurance as in full force, receiving the member's dues and paying the money over to the supreme lodge. We are unable to see how such societies could be conducted upon any other principle, without great injustice to the members.''

In *Coverdale v. Royal Arcanum*, 193 Ill. 91, liquor dealers were not permitted to become members, and in his application the deceased had stated that he was not engaged in the sale of intoxicating liquors, whereas he did keep a bar and sometimes sold liquor over the bar, and the subordinate lodge knew the fact and yet received and transmitted his dues. It was held

that there was a waiver of the forfeiture. In *Grand Lodge A. O. U. W. v. Lachmann*, 199 Ill. 140, it was held that in beneficial organizations in Illinois, the subordinate lodge is the agent of the grand lodge. While this doctrine of the agency of the subordinate lodge is somewhat qualified in *Love v. Modern Woodmen of America*, 259 Ill. 102, yet it is there held that the subordinate lodge is the agent of the principal lodge to collect the dues, and that if it receives and pays them over with knowledge of a fact which would work a forfeiture, the right to forfeit the certificate on account of that fact is waived. *Dromgold v. Royal Neighbors*, 261 Ill. 60. For all the foregoing reasons, we conclude that appellant is estopped to claim a forfeiture by reason of the answer above set out.

Appellant contends that Turner, by signing the application and by delivering it to the local camp or to appellant, bound himself that the foregoing answer was true. In several of the cases above cited the applicant signed the application containing the untrue answer and delivered it to the society and yet the society was not permitted to set up its untruth as a breach of warranty. Directly underneath the signature of Turner to the application was the following, printed in capital letters: "A Copy of your application for membership is attached to this certificate— Read it—If any answer or statement therein is not correct, notify the Head Clerk at once." It is contended that by reason of those words, the foregoing rules should not apply. In *Johnson v. Royal Neighbors of America, supra,* there was printed in the certificate a like request, and it was held that that did not affect the rule above stated.

By the fourteenth question Turner was asked, if within the last seven years he had been treated by or had consulted any person or physician in regard to any personal ailment and if so to give the details. He answered that he had been treated on April 3, 1907, for a boil by Dr. A. C. Rhiel of Tonica, Illinois, and that his recovery was complete. A plea alleged that

he had within seven years consulted a physician for other purposes, and on that plea issue was joined. There was no proof that he had ever been treated by or had consulted any other physician, but questions put to the witness, Matthew Kerwin, and an offer of proof by said witness, might have shown this, if the proof had been admitted. Kerwin had known Turner for from thirteen to sixteen years before he died, and the offer that was made was to show that shortly before Turner made this application to appellant he told the witness that he had consulted a physician for his health and had received certain advice from him. Appellant did not offer to prove that Turner stated the date of this consultation or stated that it was within seven years before this application to appellant. The question had relation also to a sleeping in a tent and appellant treats it as if the witness had testified that Turner lived in a tent four or five years before his death, but the question which elicited the answer was, whether "some four or five years *or longer*" before his death he lived in a tent, and this answer was answered in the affirmative. There was no attempt or offer to show that Turner had consulted a physician within seven years before his death.

To the question whether Turner had ever had any local disease, personal injury or serious illness, he answered "No." To the question whether he was now in sound body, mind and health, and free from disease and injury, he answered "Yes." To the question whether he had ever had consumption he answered "No." It was pleaded that each of these answers was false. The application contained an agreement that the certificate should be void unless delivered to Turner while he was in sound health, and there was a plea that he was not in sound health when this certificate was delivered to him. These matters may be considered together.

The proof shows that Turner had pneumonia a few months before he died and that after he recovered

from pneumonia he was taken with consumption and died therefrom. There was evidence tending to show that he had always been in good health, except for the ordinary diseases of childhood, until he was taken with pneumonia several months after this certificate was issued and that the consumption resulted from the pneumonia. There was evidence tending to show that he was unnaturally thin and below normal weight, and that he had been troubled with a cough before this application was made. Matthew Kerwin was a witness for defendant. He had known Turner from thirteen to sixteen years. Turner had at different times worked for him upon Kerwin's farm. He testified that some time prior to the making of this application Turner lived in a canvas tent. The court sustained numerous objections put to Kerwin which sought to obtain from him the narration of a conversation he had with Turner, not long before this application to appellant was made, concerning Turner's health. Some of the questions were leading but others were not. The jury was then withdrawn and an offer was made to prove that shortly before this application was made Turner told Kerwin that he had consulted a physician for his health and that said physician had advised him that he had tuberculosis and that he would have to live in a tent in the future for his health. An objection to this offer was sustained. In mutual benefit insurance the contract is between the society and the member. The beneficiary has no interest in the contract while the member is alive. The member can change his beneficiary whenever he pleases. In such cases declarations made by the member against his interest are admissible in evidence against the beneficiary in a suit by the beneficiary upon the certificate after the death of the member. Niblack on Benefit Societies (2nd Ed.) sec. 325; 2 Bacon on Benefit Societies, sec. 460. *Court of Honor v. Dinger*, 123 Ill. App. 406, affirmed in 221 Ill. 176, and cases there cited. Therefore any

statements or declarations which Turner made to any one, tending to show a defense to this certificate or the untruthfulness of the statements in the application, would be competent evidence against the beneficiary in this suit, where such defense is pleaded. It may be that a mere statement by Turner to Kerwin that a physician had at some time advised him that he had consumption, standing alone, would not be competent evidence, either that he did have consumption or he answered the foregoing questions untruly. But when coupled with the fact that he did live in a tent, the testimony would tend to show that at that time he regarded the advice as true and acted upon it. We are of opinion that the examination of Kerwin was unduly restricted.

Defendant offered in evidence exhibit 6, which was the application of Turner to the Mystic Workers, and attached thereto was an examination by the physician of the society, Dr. James T. Geen, in which he stated that he considered Turner a second-class risk and found unfavorable features in his physique, family or personal history, habits, residence, occupation, habits or circumstances in life, and that in his judgment his present prospects were not good for attaining full expectancy of life. Plaintiff objected to the introduction of this exhibit and that objection was overruled. The application signed by Turner was competent, but the physician's examination not signed by Turner should not have been admitted, as it was not under oath and was incompetent. *Railway Conductors' Benefit Ass'n v. Robinson*, 147 Ill. 138-158; *Pudritzky v. Knights of Honor*, 76 Mich. 428. Thereafter, and after defendant had closed its case and plaintiff had closed its rebuttal, defendant called Dr. Green as a witness and sought to examine him concerning the condition of Turner at the time he examined Turner upon his application to the Mystic Workers. It was objected that this was a part of defendant's original case, which we think

was true. It was stated by counsel for defendant that they had tried to call him before but that he was with a patient and could not be obtained. Defendant, before closing its case, should have revealed to the court that it had an absent medical witness whose professional engagements prevented him from being present at that time but that he would be produced later, and should have then asked permission to call him when he could attend. Although that was not done, yet, unless the court had some reason to doubt the truthfulness of counsel's statement, we are of opinion the witness should have been permitted to testify, in the interests of justice. The court did permit him to testify to certain things. But still we are of opinion that his examination was unduly restricted. The ruling seems to have been based upon the idea that the period inquired about was too long prior to the making of this application. If the only defense had been that he was not in good health when he made the application and when he received the certificate, that would have been a good reason for not permitting the testimony, but the issue was also being tried whether he had ever had any serious disease or consumption, and we are of opinion that the witness should not only have been permitted to testify to all that he remembered, but also to all that he remembered or testified he knew was true, after being permitted to see the report which he then prepared. *Diamond Glue Co. v. Wietzychowski*, 227 Ill. 338; *Richardson Fueling Co. v. Seymour*, 235 Ill. 319. Upon the whole record we conclude that the defense was unduly restricted in its efforts to prove the previous ill health of Turner and to show circumstances tending to indicate that he was afflicted with tuberculosis before this application was made.

One other matter requires attention. At a term after the judgment term, appellant found it necessary to invoke the jurisdiction of the trial court to sign, *nunc pro tunc*, the bill of exceptions after the time fixed by the court therefor. Thereupon, at the same time,

appellee moved to strike from the files a number of rejoinders, and introduced testimony showing that on the evening of the second day of the trial, and without leave of court and without notice to appellee, these rejoinders were filed, and that appellee and her counsel did not know thereof until long after judgment. The court struck these rejoinders from the files. The evidence upon this motion was preserved by another bill of exceptions. The parties had, in fact, gone to trial without rejoinders to the fourth and fifth replications, which were the third and fourth replications to the second plea. These replications concluded with a verification and did not tender an issue of fact, and a rejoinder thereto was necessary to complete the issues.

Appellee had taken no rule on appellant to rejoin to these replications and appellee had not been defaulted for failure to rejoin to said two replications, and therefore, if these rejoinders had been filed before the trial began, then, as no leave had been obtained to rejoin double, the rule laid down in *Ryan v. Vanlandingham*, 25 Ill. 128, would have been applicable, namely, that the first rejoinder to each of said two replications would alone be considered and the others would be treated as if they had never been filed; and, as the first rejoinder to said third replication only denied the agency of the Camp physician and the first rejoinder to said fourth replication only denied the agency of the Mercer Camp, and as both those agencies are established under the law, the case would not have changed in any respect, and it would have been immaterial whether the trial judge did or did not strike the rejoinders from the files. But the parties went to trial without any written joinder of issues upon said third and fourth replications to the second plea. When this is done, the rule is that the case is treated as if there were oral denials of the replications, under the authorities discussed by us in *Supreme Court of Honor v. Barker*, 96 Ill. App. 490. The parties having thus gone to trial as if there were oral rejoinders

to said two replications, appellant could not after the trial had begun and without leave of court and without notice and without the knowledge of appellee or her counsel file, as appellant here did, numerous special rejoinders to said two replications and thereby raise new issues, and such special rejoinders should have been disregarded by the court whenever discovered, and no harm was done to appellant by striking them from the files at a later term. In *Wyatt v. Headrick,* 21 Ill. 158, this course was pursued in the trial court after the cause had reached the Supreme Court, and that action was not disapproved. The matter is now of slight importance, for appellant, upon the reinstatement of the cause in the court below, can obtain leave to rejoin double if it wishes to do so, and can then file these rejoinders.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*