**Lettie B. Atkinson, Appellee, v. National Council of Knights and Ladies of Security, Appellant.**

**Gen. No. 6,045.**

1. INSURANCE, § 336*—*when insurer cannot dispute truthfulness of statements inserted in application by agent.* An insurance company cannot dispute the truthfulness of statements in an application for insurance, notwithstanding that they are expressly made warranties and representations as the basis for the issuance of a policy, which were inserted by its agents without fraud or collusion on the part of the applicant.

2. INSURANCE, § 338*—*who agent within rule binding insurer by false statements inserted in application by agent.* A regular examining physician · for an insurance order and a local body thereof, *held* agents of the supreme body in obtaining an application for insurance, in which, without fraud or collusion on the part of the applicant, they inserted false statements as to his health and family history.

3. INSURANCE, § 338*—*when insurer estopped by false statements as to health of assured inserted in application by medical examiner.* Where an agent of an insurance society together with its regular examining physician, with full knowledge of all the facts, falsely stated in an application for insurance, without fraud or collusion on the part of the applicant, that he was in good health, that he had not received medical treatment during the preceding five years, or submitted to surgical operations, and that his father died of appendi-

ʰSee Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

citis when in fact he had consumption, *held* to estop the insurer from asserting the falsity of the statements, notwithstanding that the applicant had previously been operated on for the removal of a growth from his head and contemplated a second operation therefor at the date of the application, which was performed before the delivery of the policy, and which subsequently developed into a cancer which caused his death.

4. INSURANCE, § 704*—*when error in sustaining demurrer to answer alleging false warranties and representations in application cured by instructions.* The fact that a demurrer was sustained to an answer in an action on a policy of insurance, alleging the falsity of warranties and representations in the application therefor, *held* not prejudicial to the defendant, where the latter was given the full benefit of such answer by an instruction to the effect that the plaintiff could not recover if his answers were not true, unless the defendant's agents were aware of their falsity at the time they were made.

5. TRIAL, § 113*—*when right to make opening and closing argument waived by defendant.* The denial of a motion to permit the defendant to make the opening and closing argument to the jury in an action on a policy of life insurance, *held* not erroneous where the defendant, by its conduct at the trial, left it to the plaintiff to open the case in introducing evidence.

Appeal from the Circuit Court of Stephenson county; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed March 9, 1915. *Certiorari* denied by Supreme Court (making opinion final).

A. W. FULTON and R. R. TIFFANY, for appellant.

LOUIS H. BURRELL and HAROLD D. JAMES, for appellee.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

Eugene M. Atkinson, twenty-nine years old, the husband of Lettie B. Atkinson, the appellee, at the instance of T. F. Barto, district manager of appellant, National Council of the Knights and Ladies of Security, applied for membership in the Freeport Council of that order, and was afterwards examined by Dr.

H. D. Wilson, an examining physician for appellant, February 12, 1911. A written application for a beneficiary certificate containing a great number of questions and answers as to the health and family history of the applicant was filled out by Dr. Wilson and signed by Atkinson. The certificate in which appellee was named as beneficiary, issued, and was delivered to the applicant by Barto March 4, 1911. The insured died of cancer January 18, 1912. Proof of death was duly made and payment refused. The amount stipulated in the contract was $2,000, with certain provisions for deductions, and it is agreed that the amount due, if anything, was $1,541. This action was brought to recover that amount, and defended on the ground that there were false statements in the application barring all right of recovery, to which defense the plaintiff answered that the examining physician was responsible for the alleged false answers and that the truth as to the matters about which those statements were made was known to appellant when it issued the certificate, and therefore it is estopped from making that defense. A jury trial resulted in a judgment for the full amount claimed, from which judgment this appeal is prosecuted.

There was evidence tending to show that the father of the insured died of consumption; and there is no question but the insured had a bunch on his head that had been removed by surgeons before the date of the application, and there was an open sore on his head at the time; that there was another operation on the day that the certificate was delivered to him, and that this sore developed into the cancer that caused his death, or perhaps more properly speaking, furnished the soil for that cancer.

In the application the cause of death of the father of applicant is written "appendicitis." The answer "No" was written after the question: "Have either of your parents, your wife, or husband, children or any

218    APPELLATE COURTS OF ILLINOIS.

Atkinson v. National Council of K. & L. of S., 193 Ill. App. 215.

of your uncles, aunts, brothers or sisters, or any other blood relative been afflicted with Consumption, Scrofula, Cancer, Insanity, Epilepsy, Gout, Rheumatism, or any other hereditary disease?''

Question 10 of its answers was as follows:

''Have you now or have you ever had any of the following diseases or symptoms of any disease of the following named organs? (Answer yes or no to each:) Bronchitis, no; Cough (habitual), no; Consumption, no; Dropsy, no; Diarrhoea (chronic), no; Enlarged glands, no; Fistula, no; Lungs (diseases of), no; Open sores, no; Pleurisy, no; Palpitation of the Heart, no; Pneumonia, no; Sunstroke, no; Skin Disease, no; Tumors of any kind, no; Typhoid Fever, no; Veins (diseases of), no; Varicose Veins, no.''

The answer ''No'' was written to the question:

''Have you had any illness, constitutional diseases or injury during the past five years requiring the services of a physician or surgeon?''

And the following question was also answered ''No:''

''Have you undergone any surgical operation, or have you any bodily malformation or weakness?''

It was provided in the beneficiary certificate that the application was made a part thereof and that each and every part should be held to be a strict warranty the same as if fully set forth in the certificate. And that:

''If said application * * * shall not be true in each and every part thereof, then this Beneficiary Certificate shall as to said member, or said member's beneficiary, be absolutely null and void.''

The evidence as to the application of the insured for admission into the Council and for a beneficiary certificate, introduced by plaintiff, is in substance, that before the application in question appellee was a member of the Council and T. F. Barto was connected with appellant as district manager, with duties to appoint local deputies and to assist them and to assist the members in securing business and to deliver policies

under special dispensation, which meant to deliver them to traveling men that are not at home regularly, or to any applicant where it would be inconvenient for him to attend the council meeting (this is Mr. Barto's description of his office and duties stated by him as witness for appellant). He asked why the husband of appellee did not apply for membership, and was told by members of the council that he had a growth on the back of his head; that it had been operated upon twice and another operation was intended, therefore he supposed he could not be admitted to the order. Barto then saw Atkinson, who was apparently in good health, and told him he was a proper subject for insurance and wrote an application for membership in the Council and signed Atkinson's name to it. This was favorably acted upon and Barto sent Dr. Wilson to examine Atkinson at his home, which was done in the presence of his wife, the appellee. The doctor was there told of the growth on the head and of the operations upon it and concluded it was an innocent growth that did not amount to much (and this seems to have been the opinion of other doctors who had seen it before that time), and wrote the answers in the application before quoted. He was told by the applicant that he was fifteen years old when his father died, that he did not know what he died of, but it was said to be a complication of diseases, whereupon the doctor wrote "appendicitis," in the blank left for the name of the disease; and while the evidence makes it probable that he died of consumption, it also appears that the fact was not generally understood in his family; that he was a frail man, and the "complication of diseases" theory was adopted by some if not all of his relatives and friends, and that his son, the insured, was not living at home at the time of his death. The doctor asked some other questions of the applicant, and said he skipped some that were printed in the blank, because they were of no consequence, and having filled in all

220        APPELLATE COURTS OF ILLINOIS.

Atkinson v. National Council of K. & L. of S., 193 Ill. App. 215.

the blanks of the application, told Atkinson to sign it, which he did without reading it. He sent a statement of his own medical examination to the company in which he certified that he made a thorough physical examination of the applicant, and his statements as to bodily conditions are in accordance with those in the application. Atkinson was accepted, and the certificate issued and Barto, as a part of his duties as agent of appellant, took it to Atkinson's home, where he found him with his head bandaged, and asked what was the matter, and Atkinson replied that he had another operation that day to remove the growth on his head, Barto said that he would soon be well, and delivered the certificate. Appellant collected and retained dues and assessments provided in the contract up to the time of the death. This testimony as to the acts of Mr. Barto and Dr. Wilson is in great part denied by them; but the question was fairly put to the jury and they apparently believed the plaintiff's witnesses. It is quite clear that no one supposed the growth was malignant at the time of the application, and the jury may well have concluded that the doctor thought. it a trifling matter, not worthy of notice, and its former removals not of enough importance to be dignified by the name of surgical operations, and that he wrote the answers in good faith; and even if the applicant had known what answers were written he might with the greatest honesty and average intelligence not have known they were wrong. There were many questions in the application that intelligent laymen could not answer without the advice of a physician, and some of them that skilful physicians would no doubt not agree in their answers. For instance, in the above quoted questions, the applicant was required to answer "Yes" or "No," whether any of his blood relation had been afflicted with consumption, cancer, scrofula, etc., or any other hereditary disease. It is common knowledge that post-mortem examinations disclose tuberculosis scars in the lungs of many persons

who were never suspected of being afflicted with consumption, and that many people have died of internal cancer that only a post-mortem would reveal. Laymen have sores and talk about scrofula, which may or may not be that disease; and the doctors disagree as to what diseases are hereditary, and very few laymen understand what is meant by the word "hereditary" as applied to disease. Again the applicant was required to answer "Yes" or "No," not merely whether he had, or ever had, numerous diseases named, but also whether he had, or ever had, symptoms of any disease of the lungs, heart or veins. Who knows what those symptoms are? It is doubtful whether the most learned physician could accurately answer the questions by "Yes" or "No." In the case of any applicant for insurance, the answer to many of the questions on the doctrine of chances would be "Yes." Yet it is likely that such an answer would prevent insurance. To assume that insurance companies soliciting insurance expect answers to such questions to be accurate, and that any mistake or misstatement, whether knowingly made or not, material to the risk or not, should furnish an absolute defense to a suit on the contract, leads to manifest absurdities and a violation of the rules of common sense and common honesty that are presumed to govern mankind in their dealings with each other. Courts have seldom permitted an extreme application of that doctrine. *Berner v. Brotherhood of American Yoemen,* 154 Ill. App. 27, and authorities there cited and discussed.

It has thus become a general rule of law that an insurance company cannot dispute the truthfulness of false statements written in the application for insurance by its agent without fraud or collusion on the part of the applicant, even though such statements are expressly made warranties on the basis of which the policy is issued. 25 Cyc. 803; *Provident Sav. Life Assur. Society v. Cannon,* 201 Ill. 260; *Johnson v.*

*Royal Neighbors of America,* 253 Ill. 570; *Turner v. Modern Woodmen of America,* 186 Ill. App. 404. We said in the *Turner* case, *supra*: "Under the rules of law prevailing in this State, the regular examining physician of such a society is the agent of the society, and the society is bound by his acts within the scope of his authority, notwithstanding an express stipulation in the application that the applicant makes him his agent." The record shows that Dr. Wilson was a regular examining physician of appellant and we think, under the authority of *Johnson v. Royal Neighbors of America, supra,* T. F. Barto must also be held to have acted as an agent of appellant in what he did in the matter. The Council was an agent of appellant in making this insurance contract (*Turner v. Modern Woodmen of America, supra*); and the evidence tends to show that it had knowledge of the physical condition of the insured at the time the certificate was issued, and afterwards when dues and assessments were collected.

We are of the opinion that under the authority of *Dromgold v. Royal Neighbors of America,* 261 Ill. 60, and the cases there cited, the agents of appellant, acting in the matter of this contract of insurance and in the collection of assessments and dues thereon, were acting sufficiently within the scope of their authority to, by their acts, heretofore recited, estop appellant from availing itself of the defense attempted in this suit; and that this is true whether or not we regard the local council as having sufficient knowledge of the facts to make its acts, as a body, binding on appellant as an estoppel.

There is much controversy in the arguments here whether the statements in the application are warranties or representations; the practical difference being that if warranties, it is unimportant whether or not they are material to the risk. Appellant pleaded these answers, in different pleas, as warranties and as rep-

resentations, and the court sustained demurrers to those pleas in which they were relied on as warranties, and error is assigned on his action in so doing. But in his instructions to the jury he told them if the answers were not true no recovery could be had on the certificate and they must find for the defendant, unless they further believe from the evidence that at the time of making said application the company or its agent or agents had knowledge of the facts concerning which the answers were made. Even if the answers in question should be held warranties, the court in instructing the jury, in substance, that they were material to the risk and required as strict proof as if they were warranties, gave appellant all the substantial advantage in the trial of the case it would have obtained had the ruling been otherwise on the demurrer to its pleas; at least the error, if any, was not of sufficient importance to warrant a reversal on that ground.

At the close of all the evidence the defendant asked to open and close the argument to the jury, and assigns error that the court refused that request. It had admitted before the introduction of evidence "that the plaintiff has a prima facie case, and all they need to do in the first instance is to introduce the contract of insurance and proof of loss." This left appellee to open the case in introduction of evidence, which she did; and whether under the pleadings she was compelled to do so or not, appellant cannot complain that the court at its suggestion treated the issues as requiring proof in the first instance by the plaintiff; and having conducted the trial on that theory to the close of the evidence, it was not error to refuse the request. 38 Cyc. 1304.

We find no substantial error in the introduction or rejection of evidence, or in giving, refusing or modifying instructions. There was conflict of evidence on material facts, but no preponderance in favor of ap-

pellant that warrants this court in reversing the judgment on the ground that the verdict was against the evidence.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*